No. 24-1371

---

# IN THE UNITED STATES COURT OF APPEALS FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

IN RE:

HILLIARY ACQUISITION CORP. 2016, LLC,

Petitioners.

---

## PETITON FOR WRIT OF MANDAMUS

---

Caressa D. Bennet
Michael R. Bennet
Ryan L. Gillcrist
Womble Bond Dickinson (US) LLP
2001 K Street, NW
Suite 400 South
Washington, DC 20006
Telephone: (202) 467-6900
Facsimile: (202) 467-6910
Carri.bennet@wbd-us.com

*Counsel for Petitioner*
*Hilliary Acquisition Corp. 2016, LLC*

**Table of Contents**

TABLE OF AUTHORITIES .................................................................................. II

GLOSSARY OF ABBREVIATIONS .................................................................V

STATEMENT OF JURISDICTION.....................................................................1

STATEMENT OF THE ISSUES............................................................................1

STATEMENT OF THE CASE................................................................................1

ARGUMENT ...........................................................................................................5

CONCLUSION.......................................................................................................12

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES .....14

CERTIFICATE OF COMPLIANCE .................................................................15

RULE 26.1 CORPORATE DISCLOSURE STATEMENT ..............................17

# Table of Authorities

## Cases

*Air Line Pilots Ass'n, Int'l v. Civil Aeronautics Bd.*,
    750 F.2d 81 (D.C. Cir. 1984)................................................................10

*Am. Hospital Ass'n v. Burwell*,
    812 F.3d 183 (D.C. Cir. 2016)...........................................................5, 8

*American Rivers and Idaho Rivers United*,
    372 F. 3d. 413 (D.C. Cir. 2004)..........................................................10

*Cutler v. Hayes*,
    818 F.2d 879 (D.C. Cir. 1987)..............................................................9

*In re al-Nashiri*,
    791 F.3d 71 (D.C. Cir. 2015)..............................................................12

*In re Core Communications, Inc.*,
    531 F.3d 849 (D.C. Cir. 2008)......................................................... 9, 10

*MCI Telecommunications Corp. v. FCC*,
    627 F.2d 322 (D.C. Cir. 1980)..............................................................9

*Public Citizen Health Research Group v. Auchter*,
    702 F.2d 1150 (D.C. Cir. 1983).........................................................10

*Telecommunications Research & Action Center v. FCC*,
    750 F.2d 70 (D.C. Cir. 1984)................................................. 1, 5, 8, 9

## Statutes and Regulations

5 U.S.C. § 706(1) ....................................................................................5

28 U.S.C. § 1651(a) ................................................................................1

47 C.F.R. § 1.2104(g)(2)........................................................................6

47 C.F.R. § 1.2104(g)(2)(i) ....................................................................6

47 C.F.R. § 1.2104(g)(2)(ii) ........................................................................6

47 C.F.R. § 1.2104(g)(2)(iii) .......................................................................6

47 C.F.R. § 309(j)(8)(C) ..............................................................................6

47 C.F.R. § 1.2109(a) ...................................................................................3

47 C.F.R. § 1.2104 .......................................................................................5

47 C.F.R. § 1.41 .........................................................................................11

The Balanced Budget Act of 1997 (P.L. 105-33 § 3002) ...........................8

The Omnibus Budget Reconciliation Act of 1993 (P.L. 103-66 § 6002) ...8

**Other Authorities**

*FCC's Spectrum Auction Authority Lapses for First Time*, Inside Towers
   (Mar. 13, 2023) .......................................................................................4

*AirCom Communication Consultants, Inc.*, Order, 16 FCC Rcd 17685
   (2001) .......................................................................................................7

*AirCom Consultants, Inc.*, Order on Reconsideration, 18 FCC Rcd 1806
   (2003) .......................................................................................................7

*Auction of Priority Access Licenses for the 3550-3650 Band; Notice and Filing
   Requirements, Minimum Opening Bids, Upfront Payments, and Other
   Procedures for Auction 105, Bidding in Auction 105 Scheduled to Begin June 25,
   2020*, AU Docket No. 19-244, Public Notice, 35 FCC Rcd 2140 (2020) ..........2, 7

*Auction of Priority Access Licenses for the 3550-3650 MHz Band, 271 Applicants
   Qualified to Bid in Auction 105*, Public Notice, 35 FCC Rcd 6672 (2020) ...........2

*Auction of Priority Access Licenses in the 3550-3650 MHz Band Closes, Winning
   Bidders Announced for Auction 105*, AU Docket No. 19-244, Public Notice, 35
   FCC Rcd 9287 (Attachment A) (2020) ...........................................................2, 7

*Hilliary Acquisition Corp 2016, LLC; Request for Waiver of Down Payment Deadline for Auction 105*, Memorandum Opinion and Order, DA 22-629 (July 18, 2022) ...........................................................................................3, 7

# GLOSSARY OF ABBREVIATIONS

| | |
|---|---|
| APA | Administrative Procedure Act |
| CBRS | Citizens Broadband Radio Service |
| ET | Eastern Time |
| FCC | Federal Communications Commission |

## <u>PETITION FOR WRIT OF MANDAMUS</u>

Hilliary Acquisition Corp. 2016, LLC ("Petitioner"), by its attorneys and pursuant to Rule 21 of the Federal Rules of Appellate Procedure, hereby petitions the Court to issue a writ of mandamus against the Federal Communications Commission ("FCC" or "Commission"), pursuant to the Court's authority under 28 U.S.C. § 1651(a). In support whereof, the following is shown.

## STATEMENT OF JURISDICTION

This Court has exclusive jurisdiction to issue a writ of mandamus to the FCC in a case involving the FCC's unreasonable delay in acting. *See Telecommunications Research & Action Ctr. v. FCC*, 750 F.2d 70 (D.C. Cir. 1984) ("*TRAC* ").

## STATEMENT OF THE ISSUES

Has the FCC unreasonably delayed refunding Petitioner's auction payments by holding onto such funds for over four years?

## STATEMENT OF THE CASE

In 2020, Petitioner participated in an FCC auction for Citizens Broadband Radio Service ("CBRS") Priority Access Licenses ("Auction 105"). Petitioner

timely paid an upfront payment of $102,700 by June 19, 2020[1] and was the high

bidder on 42 licenses.[2] Pursuant to the FCC's auction rules, each winning bidder in

Auction 105 was required to: (1) have on deposit with the FCC enough funds to

cover the down payment (i.e., 20 percent of the aggregate amount of its winning bid)

on its winning bids within ten business days after the release of the FCC's public

notice announcing the results of the Auction 105[3]; (2) submit the balance of the net

payment amount for its winning bid on or before 6:00 p.m. ET on October 1, 2020;

(3) submit electronically a properly completed long-form application (FCC Form

601) for all licenses for which it was the winning bidder in Auction 105 by

September 17, 2020 at 6:00 p.m. ET; and (4) comply with the ownership reporting

requirements of the FCC's rules by submitting a disclosure information report for

wireless telecommunications services (FCC Form 602) by September 17, 2020 at

6:00 p.m.[4]  Petitioner failed to meet its September 17, 2020, deadline for timely

---

[1] *See Auction of Priority Access Licenses for the 3550-3650 MHz Band, 271 Applicants Qualified to Bid in Auction 105*, Public Notice, 35 FCC Rcd 6672, 6691 (2020).

[2] *See Auction of Priority Access Licenses in the 3550-3650 MHz Band Closes, Winning Bidders Announced for Auction 105*, Public Notice, 35 FCC Rcd 9287 (Attachment A) (2020) ("Auction 105 Closing Public Notice").

[3] The Auction 105 Closing Public Notice was released on September 2, 2020, and established the deadline of September 17, 2020, at 6:00 p.m. Eastern Time ("ET") to submit the required deposit.

[4] *See Auction of Priority Access Licenses for the 3550-3650 Band; Notice and Filing Requirements, Minimum Opening Bids, Upfront Payments, and Other Procedures for Auction 105, Bidding in Auction 105 Scheduled to Begin June 25,*

submitting its required down payment of $58,493.00 for the licenses it won in Auction 105. On October 16, 2020, the final payment deadline, Petitioner submitted an additional $738,428.25 payment to cover the down payment, final payment, and a "late fee" of five percent of the amount due.[5] On November 4, 2020, Petitioner filed a request for waiver and extension of the down payment deadline.

On July 18, 2022, the Bureau denied Petitioner's waiver request, holding that Petitioner was in default due to its late initial down payment, and dismissing Petitioner's Auction 105 license applications.[6] The Waiver Order also indicated that the FCC would hold the $841,128.25 paid by Petitioner until such time as Petitioner's defaulted licenses are re-auctioned and the final default payment can be calculated under Section 1.2104(g)(2) of the FCC's rules.[7] Accordingly, at this point

---

*2020*, Public Notice, 35 FCC Rcd 2140 (2020) ("Auction 105 Procedures Public Notice"); *see generally* Auction 105 Closing Public Notice.

[5] *See* 47 CFR § 1.2109(a).

[6] *See Hilliary Acquisition Corp 2016, LLC; Request for Waiver of Down Payment Deadline for Auction 105*, Memorandum Opinion and Order, DA 22-629 (July 18, 2022) ("*Waiver Order*").

[7] *Id.* ¶ 19. While the Commission stated that it "will apply Hilliary's payment on deposit to satisfy [the] interim default obligation" amounting to 20 percent of its defaulted net bid for the licenses, or $161,193,00, it cited to Section 1.2106(e) of the FCC's rules, which provides more broadly that "in the event a penalty is assessed pursuant to §1.2104 for bid withdrawal or default, upfront payments or down payments on deposit with the Commission will be used to satisfy the bid withdrawal or default penalty before being applied toward any additional payment obligations that the bidder may have." It further stated that "Consistent with Commission precedent, the disposition of the remaining amount of monies on deposit with the Commission related to this matter will be addressed in a

in time, Petitioner had paid the federal government $841,128.25 for licenses, but was no longer entitled to the licenses and, while entitled to a refund of some or all of its money, was given no timeline for repayment.

On March 10, 2023, the FCC's spectrum auction authority lapsed after Congress failed to agree on the terms of extending that authority, meaning that fulfillment of the conditions the FCC stipulated for repayment of the held funds was impossible.[8] On March 28, 2023, Petitioner submitted an informal request for refund of the held funds on the basis that conducting a second CBRS auction currently is impossible[9], and on May 19, 2023, submitted a formal refund request.[10] Those requests remain pending.

The FCC has held the funds since October 16, 2020, a period of over four years.[11] The FCC's auction authority has lapsed for over a year and a half and there is no way of knowing when, if ever, it will be reinstated.

---

subsequent letter to the payor of record, after licenses covering the same spectrum are re-auctioned and the final default payment can be calculated." *Id.* at n.52.

[8] *See FCC's Spectrum Auction Authority Lapses for First Time*, Inside Towers (Mar. 13, 2023), *available at* https://insidetowers.com/fccs-spectrum-auction-authority-lapses-for-first-time/ (last viewed Dec. 3, 2024).

[9] *See* Letter from Caressa D. Bennet, Robert A. Silverman, and Stephen T. Sharbaugh, Counsel for Hilliary Acquisition Corp 2016, LLC, to Jonathan M. Campbell*,* Chief, Auctions Division, Office of Economics and Analytics (Mar. 28, 2023).

[10] *See* Refund Form Submitted by Dean Pennello, Hilliary Acquisition Corp. 2016, LLC (May 2023).

[11] Specifically, the FCC has held Petitioner's upfront payment of $102,700 since July 1, 2020, and an additional $738,428.25 since October 16, 2020.

**ARGUMENT**

The Administrative Procedure Act ("APA") requires this Court to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). Under the All Writs Act, this Court is empowered to "issue all writs necessary or appropriate in aid of their respective jurisdictions." 28 U.S.C. § 1651(a). This Court has exclusive jurisdiction to issue a writ of mandamus to the FCC in a case involving the FCC's unreasonable delay in acting. *See TRAC*, 750 F.2d at 75.

A writ of mandamus is appropriately issued where (1) Petitioner has a clear and indisputable right to relief, (2) the government agency has a clear duty to act, and (3) Petitioner has no adequate alternative remedy. *See Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 189 (D.C. Cir. 2016).

Petitioner here has a clear right to relief. Section 1.2104 of the FCC's rules provides in pertinent part:

A bidder assumes a binding obligation to pay its full bid amount upon acceptance of the winning bid at the close of an auction. If a bidder defaults or is disqualified after the close of such an auction, the defaulting bidder will be subject to a default payment consisting of a deficiency payment, described in § 1.2104(g)(2)(i)[12], and an additional payment, described in §

---

[12] The deficiency payment will equal the difference between the amount of the defaulted bid and the amount of the winning bid in a subsequent auction, so long as

1.2104(g)(2)(ii) and § 1.2104(g)(2)(iii).  The default payment will be deducted

from any *upfront payments or down payments* that the defaulting bidder has

deposited with the Commission.

47 C.F.R. § 1.2104(g)(2) (emphasis added).  Significantly, the FCC's rules do not

contain any provision for the Commission to retain the amount of a *final* payment

made by a subsequently disqualified winning bidder.  Accordingly, as the amount of

the final payment (1) cannot lawfully be considered payment for the subject licenses

because the FCC did not award those licenses to Petitioner, and therefore there is no

consideration for the final payment; and (2) cannot be applied to the default penalty

described in the FCC's rules because that penalty rule contemplates potential

deduction only from any upfront payments or down payments, there is no lawful

basis for the FCC to retain or continue to retain the amount of the final payment paid

by Petitioner.

The FCC also has no lawful basis for retaining the amounts of Petitioner's

upfront payment and down payment, absent auction authority.  *See* 47 C.F.R. §

309(j)(8)(C) ("Within 45 days following the conclusion of the competitive bidding .

. . (ii) the deposits of unsuccessful bidders shall be returned to such bidders").  The

FCC has clearly stated that a defaulting auction bidder is entitled to a refund of

---

there have been no intervening withdrawn bids that equal or exceed the defaulted
bid or the subsequent winning bid.  *See* 47 C.F.R. § 1.2104(g)(2)(i).

upfront payment monies in excess of its auction obligations. *See* Auction 105 Closing Public Notice, ¶ 27 ("Upfront payment monies on deposit with the Commission that are in excess of an applicant's Auction 105 obligations will be refunded to the payer of record, as identified on the FCC Form 159 submitted with the applicant's upfront payment, unless that payer submits written authorization providing alternative payee instructions."); Auction 105 Procedures Public Notice, ¶ 230. Such refund processing "generally takes up to two weeks to complete,"[13] a far cry from the four plus years that Petitioner has been waiting.

While the FCC stated, with respect to the funds of Petitioner that it continues to hold, that, "*[c]onsistent with Commission precedent*, the disposition of the remaining amount of monies on deposit with the Commission related to this matter will be addressed in a subsequent letter to the payor of record, after licenses covering the same spectrum are re-auctioned and the final default payment can be calculated,"[14] the precedent cited for that procedure is clearly distinguishable. In the case cited, *In the Matter of Application of AirCom Communication Consultants, Inc.*, Order, 16 FCC Rcd 17685, 17691 n.47 (2001), *recon denied sub nom.*, *In the Matter of Application of AirCom Consultants, Inc.*, Order on Reconsideration, 18 FCC Rcd 1806 (2003), the FCC had auction authority and therefore was legally capable of

---

[13] *Id.* ¶ 231; Auction 105 Closing Public Notice, ¶ 30.
[14] *Waiver Order* at n.52 (emphasis added).

determining the final default payment by re-auctioning the subject licenses.[15]   In

Petitioner's case, the FCC has no such authority, and it is therefore legally

impossible for the FCC to determine the final default payment utilizing the intended

process.  Indeed, having lost is auction authority, the FCC no longer has any right to

hold onto Petitioner's money.

While no statute directly addresses the issue of auction refunds, this Court will

look at other factors to determine whether the agency's delay violates a clear duty.

"[I]n situations where plaintiffs allege that agency delay is unreasonable despite the

absence of a specific statutory deadline, the entire *TRAC* factor analysis may go to

the threshold jurisdictional question: does the agency's delay violate a clear duty?"

*Am. Hosp. Ass'n*, 812 F.3d at 190.   The TRAC factors come from this court's

decision in *Telecommunications Research & Action Center v. FCC*.  Specifically,

this Court will analyze: (1) the time an agency takes to make a decision; (2) where

Congress has provided a timetable or other indication of the speed with which it

expects the agency to proceed in the enabling statue, that statutory scheme may

supply content for this rule of reason; (3) delays that might be reasonable in the

sphere of economic regulation are less tolerable when human health and welfare are

---

[15] The Omnibus Budget Reconciliation Act of 1993 (P.L. 103-66, § 6002) granted
the FCC auction authority, which was due to expire September 30, 1998.  The
Balanced Budget Act of 1997 (P.L. 105-33, § 3002) subsequently extended the
FCC's auction authority through September 30, 2007.

at stake[16]; (4) the effect of expediting delayed action on agency activities of a higher or competing priority; and (5) the nature and extent of the interests prejudiced by delay. *See TRAC*, 750 F.2d at 80.

In considering the time an agency takes to make a decision, courts will apply a "rule of reason."[17] *In re Core Communications, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008). This Court has previously ruled against the FCC and granted writs of mandamus to compel the FCC to act. The Court has found that the FCC's four-year delay in determining whether a tariff is "just and reasonable" was unreasonable and that the time the FCC took in responding to a petition was "egregious." *Id.* at 850. In *In re Core Communications*, the D.C. Circuit granted a writ of mandamus directing the FCC to explain the legal basis for its ISP-bound compensation rules. *See id.* The D.C. Circuit ruled that taking six years to respond to its request for an

---

[16] Although delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake, "[e]conomic harm is clearly an important consideration and will, in some cases, justify court intervention…" *Cutler v. Hayes*, 818 F.2d 879, 898 (D.C. Cir. 1987).

[17] The standard applicable to delays in FCC decision-making "revolves around a 'rule of reason' as to how long the FCC may take between the filing of tariff revisions and its final decision." *MCI Telecommunications Corp. v. FCC*, 627 F.2d 322, 340 (D.C. Cir. 1980). "It assumes that rates will be finally decided within a reasonable time encompassing months, occasionally a year or two, but not several years or a decade." *Id.* Additionally, in *MCI*, the D.C. Circuit stated that the delay at issue "threaten[ed] the FCC's credibility…. Many of the same considerations that impel judicial protection of the right to a 'speedy trial' in criminal cases or implementation of civil decrees with all deliberate speed are not inapposite in agency deliberations." *Id.* at 340-41.

explanation of the legal basis for rules excluding Internet Service Provider bound calls from the reciprocal compensation requirement of the Telecommunications Act warranted a writ of mandamus. *Id.* at 857. *See also American Rivers and Idaho Rivers United*, 372 F.3d. 413, 419 (D.C. Cir. 2004) (finding that FERC's delay of six years in responding to a petition was "nothing less than egregious.").[18] Accordingly, precedent supports a finding that the FCC's refusal for over four years to refund Petitioner's money is egregious, unreasonable, and properly a basis for issuance of a writ of mandamus.

A review of the nature and extent of the interests prejudiced by the delay provides further support for the issuance of a writ of mandamus. Being unable to access the money owed to it by the Commission for over four years has harmed Petitioner in a number of ways. In addition to the permanent loss of the interest that would have been earned by Petitioner (and which the FCC has no obligation to return), Petitioner has been unable to use or invest the principal amount of $841,128.25 for over four years. Petitioner had planned to use these funds to finance the buildout of broadband service to southeastern Oklahoma, within the Choctaw

---

[18] *See also Air Line Pilots Ass'n, Int'l v. Civil Aeronautics Bd.*, 750 F.2d 81, 86 (D.C. Cir. 1984) (holding that a five-year delay is unreasonable); *Public Citizen Health Research Grp. v. Auchter*, 702 F.2d 1150, 1157-59 (D.C. Cir. 1983) (finding a three-year delay from announcing intent to regulate to final rule unreasonable given the significant risk of grave danger of a synthetic organic chemical to the lives of individuals.)

Nation, more particularly in rural parts of Leflore County, an area currently unserved with broadband service. The project would have served 200 homes and extended 10 miles of fiber into these unserved areas. Accordingly, the interests prejudiced by the delay go beyond Petitioner and extend to all those who live, work, and travel through southeastern Oklahoma, within the Choctaw Nation, more particularly in rural parts of Leflore County.

While there is clear, demonstrable, and substantial harm to Petitioner and the public caused by the FCC's refusal to refund the held monies, there is no harm to the FCC or public that would result from issuance of a refund to Petitioner. The purpose of the FCC's holding on to the money is to ensure that Petitioner is penalized for defaulting on its winning bid by failing to make a timely down payment and to deter future auction participants from failing to make a timely down payment on licenses won at auction.

Petitioner has no adequate alternative remedy other than to seek a writ of mandamus. The only avenue available for relief at the FCC is an Informal Request for Commission Action filed pursuant to Section 1.41 of the FCC's rules. Hilliary filed such request with the FCC on March 28, 2023, which remains pending. Unless and until the Commission acts on such request, it cannot appeal any adverse decision, and the FCC is not required to act on such request.

Should this Court determine that Petitioner has not met the criteria for mandamus discussed above, it may still grant a writ of mandamus to the extent it finds that Petitioner has identified an irreparable injury that will go unredressed if it does not secure such relief.[19]  The clear, demonstrable, and substantial harm discussed above that has been and will continue to be suffered by Petitioner constitutes irreparable injury that will go unredressed if it does not secure the requested mandamus relief.  Absent a writ of mandamus, the FCC will continue to hold Petitioner's funds to the detriment of both Petitioner and the public.

## CONCLUSION

The FCC has no legal basis for continuing to withhold the funds to which Petitioner is entitled.  When the FCC lost its auction authority, it not only lost its ability to hold a reauction for the defaulted licenses, it lost its authority to hold on to any deposits or other paid auction moneys for the purpose of calculating a penalty. The FCC's refusal to refund Petitioner's auction payments for over four years is egregious and constitutes unreasonable delay.  Based on the unreasonable delay, Section 706 of the APA requires this Court to compel the FCC to issue a refund to Petitioner.

---

[19] *See In re al-Nashiri*, 791 F.3d 71, 79 (D.C. Cir. 2015).

Respectfully submitted,

/s/ Caressa D. Bennet

Caressa D. Bennet

Michael R. Bennet

Ryan L. Gillcrist

Womble Bond Dickinson (US) LLP

2001 K Street, NW

Suite 400 South

Washington, DC 20006

*Attorneys for Petitioners*

Dated: December 5, 2024

**Certificate as to Parties, Rulings, and Related Cases**

Pursuant to Circuit Rules 12(c) and 28(a)(1), Petitioner certifies the following.

## I.      Parties

### a.  Petitioner

Hilliary Acquisition Corp. 2016, LLC

### b.  Respondent

Federal Communications Commission

## II.      Rulings Under Review

Petitioner seeks a writ of mandamus to compel the Federal Communications Commission ("FCC" or "Commission") to reimburse Petitioner's auction deposit that has been held since October 16, 2020.

## III.     Related Cases

This case was not previously before the Circuit Court or any other court.

**CERTIFICATE OF COMPLIANCE**

Pursuant to Federal Rule of Appellate Procedure 32(g)(1), the undersigned certifies that this mandamus petition complies with the applicable typeface, type style, and type-volume limitations. This petition was prepared using a proportionally spaced type (Times New Roman, 14 point). Exclusive of the portions exempted by Federal Rule of Appellate Procedure 32(f) and D.C. Circuit Rule 32(e)(1), this petition contains 3,099 words. This certificate was prepared in reliance on the word-count function of the word processing system used to prepare this petition.

December 5, 2024                              Respectfully submitted,

                                             /s/ Ryan L. Gillcrist
                                             Ryan L. Gillcrist
                                             Womble Bond Dickinson (US) LLP
                                             2001 K Street, NW
                                             Suite 400 South
                                             Washington, DC 20006

## CERTIFICATE OF SERVICE

I hereby certify that on December 5, 2024, I electronically filed the foregoing document with the Clerk of the Court for the U.S. Court of Appeals for the District of Columbia Circuit using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

I further certify that I have caused the foregoing petition to be served by courier and by electronic mail on the Commission as follows:

**Federal Communications Commission**
Attn: General Counsel
45 L Street N.E.
Washington, D.C. 20554
litigationnotice@fcc.gov

December 5, 2024                    Respectfully submitted,

                                   /s/ Ryan L. Gillcrist
                                   Ryan L. Gillcrist
                                   Womble Bond Dickinson (US) LLP
                                   2001 K Street, NW
                                   Suite 400 South
                                   Washington, DC 20006

## **Rule 26.1 Corporate Disclosure Statement**

Pursuant to Rule 26.1 of the Federal Rules of Civil Procedure, Petitioner

Hilliary Acquisition Corp. 2016, LLC declares that Petitioner is a limited liability

company organized under the laws of Oklahoma.  Petitioner has no parent

company and no publicly-held company has a 10% or greater ownership interest in

Petitioner.

Respectfully submitted on December 5, 2024.

Respectfully submitted,

/s/ Caressa D. Bennet
Caressa D. Bennet
Michael R. Bennet
Ryan L. Gillcrist
Womble Bond Dickinson (US) LLP
2001 K Street, NW
Suite 400 South
Washington, DC 20006

*Attorneys for Petitioners*

No. _____

---

## UNITED STATES COURT OF APPEALS FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

IN RE:

HILLIARY ACQUISITION CORP. 2016, LLC,

Petitioners.

---

## ADDENDUM TO PETITON FOR WRIT OF MANDAMUS TO THE FEDERAL COMMUNICATIONS COMMISSION

---

Caressa D. Bennet
Michael R. Bennet
Ryan L. Gillcrist
Womble Bond Dickinson (US) LLP
2001 K Street, NW
Suite 400 South
Washington, DC 20006
Telephone: (202) 467-6900
Facsimile: (202) 467-6910
Carri.bennet@wbd-us.com

*Counsel for Petitioner*
*Hilliary Acquisition Corp. 2016, LLC*

# Addendum Table of Contents

**LETTER FROM CARESSA D. BENNET, ROBERT A. SILVERMAN, AND STEPHEN T. SHARBAUGH, COUNSEL FOR HILLIARY ACQUISITION CORP 2016, LLC, TO JONATHAN M. CAMPBELL, CHIEF, AUCTIONS DIVISION, OFFICE OF ECONOMICS AND ANALYTICS (MAR. 28, 2023)** ................................................................. ADD. 1 – ADD. 3

**HILLIARY ACQUISITION CORP 2016, LLC; REQUEST FOR WAIVER OF DOWN PAYMENT DEADLINE FOR AUCTION 105, MEMORANDUM OPINION AND ORDER, DA 22-629 (JULY 18, 2022)** ..........ADD. 4 - ADD. 12

**REFUND FORM SUBMITTED BY DEAN PENNELLO, HILLIARY ACQUISITION CORP. 2016, LLC (MAY 2023)** ....................................ADD. 13



March 28, 2023

<u>VIA EMAIL</u>

Jonathan M. Campbell
Chief, Auctions Division
Office of Economics and Analytics
Federal Communications Commission
45 L Street NE
Washington, DC 20554

**Re:     Request for Expedited Auction Refund**

Womble Bond Dickinson (US) LLP

2001 K Street, NW
Suite 400 South
Washington, DC 20006

t:   202.467.6900
f:   202.467.6910

Carri Bennet
Partner
Direct Dial: 202-857-4519
Direct Fax: 202-261-0079
E-Mail: Carri.Bennet@wbd-us.com

Dear Mr. Campbell:

Hilliary Acquisition Corp 2016, LLC ("Hilliary"), by its counsel and pursuant to Section 1.41 of the rules of the Federal Communication Commission ("FCC" or "Commission"),[1] requests  expedited refund of Hilliary's remaining monies on deposit related to its participation in Auction 105 for Priority Access Licenses (PALs) in the 3550-3650 MHz (3.5 GHz) Citizens Broadband Radio Service ("CBRS") band.

**Background**

Hilliary, a family-owned company, provides through its operating company affiliates telecommunications and broadband services in predominantly rural areas of Oklahoma, Texas, and Iowa. In 2022, the Office of Economics and Analytics and Wireless Telecommunications Bureau ("Bureaus") denied Hilliary's request for waiver of the down payment deadline for Auction 105.[2] The Bureaus noted in the Order that, consistent with Commission precedent, the disposition of the remaining monies on deposit related to this matter would be addressed after "licenses covering the same spectrum are re-auctioned and the final default payment can be calculated."[3]

Now, in an *unprecedented and historic* move, Congress for the first time has allowed the spectrum auction authority of the Commission to lapse as of March 10, 2023.[4] As further detailed below, not only is a PAL re-auction currently impossible, but also unnecessary in light of the dynamic spectrum coordination capabilities built into the CBRS rules. Accordingly, the Bureaus can and must resolve the matter of Hilliary's final default payment and refund immediately. Indeed, the Commission has no other options given the now non-existent scope of its authority.

---

[1] 47 C.F.R. § 1.41.
[2] *In the matter of Hilliary Acquisition Corp 2016, LLC, Request for Waiver of Down Payment Deadline for Auction 105*, Memorandum Opinion and Order, (rel. Jul. 18, 2022) ("Order"). Hilliary currently has $841,128.25 on deposit, reflecting its upfront payment of $102,700.00 and a subsequent payment in the amount of $738,428.25 intended to cover the down and final payments and related fees.
[3] *Auction of Priority Access Licenses for the 3550-3650 MHz Band; Notice and Filing Requirements, Minimum Opening Bids, Upfront Payments, and Other Procedures for Auction 105; Bidding in Auction 105 Scheduled to Begin June 25, 2020*, Public Notice, FCC 20-18 (rel. Mar. 2, 2020).
[4] *See* "FCC's Spectrum Auction Authority Lapses for First Time," Inside Towers (Mar. 13, 2023).

Womble Bond Dickinson (US) LLP is a member of Womble Bond Dickinson (International) Limited, which consists of independent and autonomous law firms providing services in the US, the UK, and elsewhere around the world. Each Womble Bond Dickinson entity is a separate legal entity and is not responsible for the acts or omissions of, nor can bind or obligate, another Womble Bond Dickinson entity. Womble Bond Dickinson (International) Limited does not practice law. Please see www.womblebonddickinson.com/us/legal-notice for further details.

Add. 1



**A CBRS PAL Re-Auction is Currently Impossible**

The Commission's spectrum auction authority lapsed due to inaction from the Senate to pass the House bipartisan bill to extend such auction authority until May 19, 2023. New legislation must be enacted to reauthorize the Commission's spectrum auction authority. It is unknown how and when that would occur. Given the indefinite timeline of reauthorizing FCC spectrum auction authority, the prospect of the Commission re-auctioning unlicensed PAL spectrum remaining from Auction 105 is even more remote. Prior to this authorization lapse, it was known that the Commission had no auctions scheduled for 2023, which has given Congress more leeway to ruminate on and debate this matter without a pressing need for immediate resolution.[5] The Commission also has largely fulfilled its spectrum allocation and licensing obligations by conducting Auctions 110 and 107 in accordance with prior Congressional mandates.[6] More recently, the Commission has favored proposing, and in some cases adopting, non-auction mechanisms to reallocate spectrum.[7]

**A CBRS PAL Re-Auction is Unnecessary by Design**

By design, the Commission's own CBRS rules provide that unused PALs are available for use by General Authorized Access ("GAA") users:[8]

§ 96.35 *General authorized access use.*

(a) General Authorized Access Users shall be permitted to use frequencies assigned to PALs when such frequencies are not in use, as determined by the [Spectrum Access System], consistent with § 96.25(c) [pertaining to PAL Protection Areas].

With the ongoing proliferation and operation of Spectrum Access Systems and Environmental Sensing Capabilities that support dynamic coordination within the band,[9] *all* CBRS spectrum is

---

[5] *See* "[Stopgap funding bill would grant temporary FCC auction authority, leave NG911 funding in limbo](#)," Urgent Communications (September 28, 2022) ("…the fact that no spectrum auctions are scheduled for 2023 means that lawmakers have more flexibility in terms of when they pass legislation to address the matter"); *see also* "[FCC's spectrum auction authority nears March expiration](#)," Roll Call (February 28, 2023) ("[Senator Ted] Cruz, who became the top Republican on Senate Commerce at the start of the current Congress, wasn't involved in the negotiations on the House-passed legislation and is taking a 'fresh look' at the matter…")

[6] *See Consolidated Appropriations Act, 2021*, Pub. L. 116-260 (2020) (incorporated Beat CHINA for 5G Act of 2020) (The legislation required the FCC to start an auction [(i.e., Auction 110)] to grant new initial licenses subject to flexible use in the 3450-3550 MHz band); see also MOBILE NOW Act, Pub. L. No. 115-141, Division P, Title VI, § 601 et seq. (2018) (The legislation required the FCC to identify at least 255 megahertz of federal and non-federal spectrum for mobile and fixed wireless broadband use prior to December 31, 2022, which led to Auction 107).

[7] *See In the Matter of Amendment of Part 90 of the Commission's Rules*, Seventh Report and Order and Ninth Further Notice of Proposed Rulemaking, WP Docket No. 07-100 (rel. Jan. 18, 2023) (The Seventh Report and Order adopted a mechanism to reallocate spectrum use through a leasing model.); *see also In the Matter of Expanding Use of the 12.7-13.25 GHz Band for Mobile Broadband or Other Expanded Use*, Notice of Inquiry and Order, GN Docket No. 22-352 (rel. Oct. 28, 2022) (The NOI sought comment on using an accelerated relocation payment approach to reallocate spectrum in the 12.7-13.25 GHz band).

[8] 47 C.F.R. § 96.35(a).

[9] *See Wireless Telecommunications Bureau and Office of Engineering and Technology Announce the Approval of Environmental Sensing Capabilities for the 3.5 GHz Band*, GN Docket No. 15-319, Public Notice, DA 19-352 (WTB/OET 2019); *see also Wireless Telecommunications Bureau and Office of Engineering and*



already available on either a PAL or GAA basis. As such, the re-auctioning of PALs that went unlicensed in Auction 105 is wholly unnecessary in order to ensure that the spectrum is put to efficient use and promotes economic opportunity and competition.

Moreover, the bidding for PALs in Auction 105 concluded well over two years ago on August 25, 2020, with over 200 bidders winning over 20,000 licenses. To date, the Bureaus have long since granted, dismissed, or otherwise disposed of a vast majority (if not all) of the PAL license applications that were filed following Auction 105. With a fully populated CBRS ecosystem and no current FCC auction authority, there is no reason for the Bureaus to wait on a future act of Congress to resolve this final default payment matter.

Finally, the return of the held monies to Hilliary will allow it to reinvest the funds in rural communities that need broadband services further serving the public interest. Hillary has a long-time, demonstrated commitment to serving rural areas with telecommunications and broadband services. Meanwhile, the FCC's delay in returning these funds prevents their use for any purpose.

If there are any questions regarding this matter, please contact the undersigned.

Respectfully submitted,

**HILLIARY ACQUISTION CORP 2016, LLC**

By: _/s/ Caressa D. Bennet_____
Caressa D. Bennet
Robert A. Silverman
Stephen T. Sharbaugh

*Counsel for Hilliary Acquisition Corp 2016, LLC*

cc: P. Michele Ellison, General Counsel, OGC
Gary Michaels, Deputy Division Chief, Auctions Division, OEA
Senator Markwayne Mullin
Senator James Lankford
Representative Tom Cole

---

*Technology Conditionally Approve Seven Spectrum Access System Administrators for the 3.5 GHz Band*, GN Docket No. 15-319, Public Notice, 31 FCC Rcd 13355 (WTB/OET 2016); *see also Wireless Telecommunications Bureau and Office of Engineering and Technology Conditionally Approve Three Spectrum Access System Administrations for the 3.5 GHz Band*, GN Docket Nos. 17-258, 15-319, Public Notice, DA 21-538 (WTB/OET 2021).

**Before the**
**Federal Communications Commission**
**Washington, D.C. 20554**

| | |
|---|---|
| In the Matter of | ) |
| | ) |
| Hilliary Acquisition Corp 2016, LLC | ) |
| | ) |
| Request for Waiver of | ) |
| Down Payment Deadline for Auction 105 | ) |

**MEMORANDUM OPINION AND ORDER**

**Adopted:  July 18, 2022**                                    **Released:  July 18, 2022**

By the Chiefs, Auctions Division, Office of Economics and Analytics, and Mobility Division, Wireless
Telecommunications Bureau:

## I.    INTRODUCTION

1.    In this Order, we deny a request filed by Hilliary Acquisition Corp 2016, LLC ("Hilliary"), a
winning bidder of 42 licenses in Auction 105, for waiver of the down payment deadline.[1]  Hilliary failed
to make its required down payment for the licenses by the deadline established under the Commission's
rules, instead submitting a payment three weeks late.[2]  Subsequently, Hilliary submitted a request for
waiver of the down payment deadline.[3]  For the reasons set forth below, we deny Hilliary's request, assess
an interim default payment, and dismiss Hilliary's long-form applications.

## II.    BACKGROUND

2.    Auction 105 was an auction of Priority Access Licenses in the 3550-3650 MHz band.[4]  In the
*Auction 105 Procedures Public Notice*, the Wireless Telecommunications Bureau (WTB) and the Office
of Economics and Analytics (OEA) described the requirements for participation in the auction and
explained the post-auction procedures, including deadlines for the submission of down payments and the
filing of long-form applications by winning bidders.[5]  The *Auction 105 Procedures Public Notice* stated
specifically that down payments would be due from winning bidders ten business days after the release of
the auction's closing public notice, consistent with the requirement set forth in the Commission's rules.[6]
Winning bidders who failed to make their down payments on time would be considered in default, and
defaulting bidders would be liable for default payments.[7]  The *Auction 105 Procedures Public Notice* also

---

[1] *See Auction of Priority Access Licenses in the 3550-3650 MHz Band Closes; Winning Bidders Announced for
Auction 105*, Public Notice, 35 FCC Rcd 9287 (OEA/WTB 2020) (*Auction 105 Closing Public Notice*).

[2] 47 CFR § 1.2107(b).

[3] Request for Waiver and Extension of Hilliary Acquisition Corp 2016, LLC (filed November 4, 2020) (Request for
Waiver).

[4] *See Auction of Priority Access Licenses for the 3550-3650 MHz Band, Comment Sought on Competitive Bidding
Procedures for Auction 105*, Public Notice, 34 FCC Rcd 9215 (2019) (*Auction 105 Comment Public Notice*).

[5] *See Auction of Priority Access Licenses for the 3550-3650 MHz Band, Notice and Filing Requirements, Minimum
Opening Bids, Upfront Payments and Other Procedures for Auction 105*, Public Notice, 35 FCC Rcd 2140
(OEA/WTB 2020) (*Auction 105 Procedures Public Notice*).

[6] *Id.* at 2202; 47 CFR § 1.2107(b).

[7] *Id.* at 2204 (citing 47 CFR § 1.2104(g)(2)).

made clear that long-form applications would be due ten business days after the release of the *Auction 105 Closing Public Notice*, as required by the Commission's rules.[8]

3.   Hilliary was found to be a qualified bidder for Auction 105, after it filed a complete short-form application and submitted an upfront payment in the amount of $102,700.00.[9]  Hilliary claimed eligibility for a fifteen percent bidding credit as a rural service provider.[10]  Bidding in Auction 105 began on June 25, 2020, and it ended on August 25, 2020.

4.   On September 2, 2020, WTB and OEA announced the close of Auction 105 and identified the winning bidders in the *Auction 105 Closing Public Notice*.  The *Auction 105 Closing Public Notice* announced that Hilliary was the winning bidder for 42 licenses across 21 counties, with net winning bids totaling $805,965.00.[11]  Pursuant to section 1.2107(b) of the Commission's rules, each winning bidder in Auction 105 was required to make a down payment within ten business days after the release of the *Auction 105 Closing Public Notice*.[12]  Accordingly, each winning bidder was required to satisfy its down payment obligation no later than September 17, 2020.[13]  The *Auction 105 Closing Public Notice* further advised winning bidders to make payment arrangements well in advance of the deadline.[14]  The down payments would bring each winning bidder's total amount of money on deposit with the Commission up to twenty percent of the net amount of its winning bids.[15]

5.   To satisfy its down payment obligation to bring its amount on deposit with the Commission up to twenty percent of its net winning bids, Hilliary was required to submit $58,493.00 to the Commission by September 17, 2020.[16]  Hilliary failed to make any payment by that deadline, thereby defaulting on its winning bids.

---

[8] *Id.* at 2202 (citing 47 CFR § 1.2107(c)).

[9] *Auction of Priority Access Licenses for the 3550-3650 MHz Band, 271 Applicants Qualified to Bid in Auction 105*, Public Notice, 35 FCC Rcd 6672, 6691 (2020) (*Auction 105 Qualified Bidders Public Notice*).

[10] *Auction 105 Qualified Bidders Public Notice*, 35 FCC Rcd at 6685 (Attachment A).

[11] *Auction 105 Closing Public Notice*, 35 FCC Rcd at 9306 (Attachment A).

[12] 47 CFR § 1.2107(b).  *See Auction 105 Procedures Public Notice*, 35 FCC Rcd at 2202.

[13] *Auction 105 Closing Public Notice,* 35 FCC Rcd at 9289; *see also Auction 105 Procedures Public Notice*, 35 FCC Rcd at 2202.

[14] "To avoid untimely payments, each winning bidder should discuss arrangements with its financial institution . . . several days before it plans to make the wire transfer, and each should allow sufficient time for the transfer to be initiated and completed prior to the deadline.  The Commission repeatedly has cautioned auction participants about the importance of planning ahead to prepare for unforeseen last-minute difficulties in making payments by wire transfer."  *Auction 105 Closing Public Notice,* 35 FCC Rcd at 9291 (emphasis added).  *Cf. Auction 105 Procedures Public Notice,* 35 FCC Rcd at 2182 (similarly advising potential Auction 105 participants with regard to upfront payments to discuss arrangements with their bankers "several days" before executing their wire transfers and to allow sufficient time for transfers to be initiated and completed before the deadline).   Prospective bidders were also reminded of dates and the consequences of failing to meet them in a free, public Application Tutorial that was available for playback from the FCC's website:  https://wireless.fcc.gov/auctions/105/Auction-105-Application-Tutorial_3/presentation_html5.html.

[15] *Auction 105 Procedures Public Notice*, 35 FCC Rcd at 2204, paras. 227-29 (citing 47 CFR § 1.2104(g)(2)).

[16] Attachment B of the *Auction 105 Closing Public Notice* advised winning bidders of the exact amounts for deposits due after the application of the bidder's upfront payment.  *Auction 105 Closing Public Notice*, 35 FCC Rcd at 9318-43.  The *Auction 105 Closing Public Notice* shows that Hilliary had an upfront payment amount of $102,700.00 on deposit and therefore was required to submit an additional $58,493.00 by September 17, 2020, to satisfy its $161,193.00 down payment obligation.  Attachment B also shows that Hilliary's final payment amount would have been $644,772.00.

6.    Pursuant to section 1.2109(a) of the rules, a winning bidder that timely makes its down payment is required to pay a final payment, consisting of its remaining balance due.[17]  Section 1.2109(a) provides that any such winner also has an option to pay the final balance ten business days after the final payment deadline, provided that it also pays a late fee equal to five percent of the amount due.[18]  The *Auction 105 Closing Public Notice* announced that the final payment deadline was October 1, 2020, and that the late final payment deadline was October 16, 2020.[19]

7.    Hilliary made a payment in the amount of $738,428.25 on October 8, 2020, three weeks after the deadline for down payments had passed.  Subsequently, on November 4, 2020, Hilliary submitted an amendment to its long-form application seeking waiver of the down payment deadline and acceptance of its late payment.[20]  In it, Hilliary states that, as the September 17 down payment deadline approached, Hilliary was "working diligently" for weeks to complete its Auction 105 long-form applications, as well as a separate short-form application to participate in another Commission auction of wireless licenses, Auction 107.[21]  Hilliary claims that, in the second week of September, its Chief Financial Officer (CFO) and one other "principal executive" learned that they had been exposed to the coronavirus "and immediately underwent self-quarantine outside of [Hilliary's] offices" for two weeks each.[22]  Further, Hilliary submits that "at least four members of [its] executive and senior management group . . . were operating on a limited capacity while quarantined outside the office and/or tending to health and family issues."[23]

8.    Hilliary states that its officers' September 2020 quarantines curtailed its ability to execute routine business operations and meet a series of FCC auction deadlines.[24]  As a result, Hilliary says that its CFO took on considerable additional responsibilities while in quarantine, which contributed to a miscommunication between the CFO, its staff, and its bank regarding its down payment.  Hilliary states that it only realized this error after the October 1, 2020, final payment deadline had passed.  Hilliary explains that its October 8 payment was intended to cover the down payment and final payment, along with an additional 5% "late fee."[25]

## III.    DISCUSSION

9.    The Commission's rules may be waived for good cause shown.[26]  As interpreted by the courts, the party seeking waiver of a rule's requirements must demonstrate that "special circumstances warrant a deviation from the general rule and such deviation will serve the public interest."[27]  Thus, in order to receive the waiver it seeks, Hilliary must demonstrate either: (1) that "[t]he underlying purpose of

---

[17] 47 CFR § 1.2109(a).

[18] *Id.*

[19] *Auction 105 Procedures Public Notice*, 35 FCC Rcd at 2202 (citing 47 CFR § 1.2109(a)).

[20] Request for Waiver at 1.

[21] *Id.*

[22] *Id.* at 2.

[23] *Id.*

[24] *Id.*

[25] *Id.*

[26] 47 CFR § 1.3.  This waiver standard, and the waiver standard applied in the context of wireless radio services licenses, 47 CFR § 1.925, have been found to be substantially the same.  *See Delta Radio, Inc.*, Memorandum Opinion and Order, 18 FCC Rcd 16889, 16891, para. 7 & n.19 (2003) (citing *Bellsouth Corporation v. FCC*, 162 F.3d 1215, 1225 n.10 (D.C. Cir. 1999)).

[27] *See, e.g., Northeast Cellular Tel. Co. v. FCC*, 897 F.2d 1164, 1166 (D.C. Cir. 1990).  *See also* 47 CFR § 1.925(b)(3)(i)-(ii).

the rule would not be served or would be frustrated by application to the instant case, and that a grant of the waiver would be in the public interest;" or (2) that, "[i]n view of unique or unusual factual circumstances of the instant case, application of the rule(s) would be inequitable, unduly burdensome or contrary to the public interest, or the applicant has no reasonable alternative" to comply, other than seeking a waiver of the rule.[28] We find that Hilliary has made neither of these two possible demonstrations for a waiver.

10. As to the first showing, Hilliary's proffered justifications for waiver echo those that we have rejected in the past, and Hilliary has not persuaded us to depart from that precedent. The Commission has enforced the initial down payment deadline in cases where unsuccessful waiver applicants blamed a late down payment, in whole or in part, on a medical exigency or bank error.[29] Hilliary submits that the pandemic's impacts on its capacity to meet the down payment deadline are unique and unusual circumstances that justify waiver of the rule.[30] We disagree.

11. Waiver of Auction 105's down payment deadline would conflict with the policies that undergird the rule and would thereby impair our ability to meet the Commission's policy objectives in future auctions.[31] The Commission strictly enforces the down payment rule—thus far, without exception. We do so not simply to confirm each winning bidder's ability to pay, but also to safeguard the integrity of the auction process by avoiding opportunities to game the auction process.[32] We decline to depart from that practice here.

12. The Commission has consistently rejected arguments that it should waive the down payment rule where a winning bidder made a payment very shortly after the deadline, and for reasons similar to those presented here. In one such instance, winning bidder Ted W. Austin sought waiver of Auction 62's down payment deadline after he made his payment just one day late.[33] There, Mr. Austin said that a family emergency made it impossible for him to appear at his bank and initiate the wire transfer on the due date.[34] The Commission nonetheless explained that it would not waive the down payment deadline, "reasoning that 'the integrity and functioning of the auction process is dependent on having payment obligations on winning bids promptly met.'"[35] And, the policy of strictly enforcing the rule serves a

---

[28] 47 CFR § 1.925(b)(3)(i)-(ii).  *See also Northeast Cellular*, 897 F.2d at 1166; *WAIT Radio v. FCC*, 418 F.2d 1153, 1155, 1157 (D.C. Cir. 1969), *aff'd*, 459 F.2d 1203 (1972), *cert. denied*, 93 S.Ct. 461 (1972) (finding that the Commission may decide in some instances that rule waiver serves the public interest if an applicant's proposal will not undermine the policy served by the rule); *Thomas Radio v. FCC*, 716 F.2d 921, 924 (D.C. Cir. 1983).

[29] *Ted W. Austin, Jr.*, Memorandum Opinion and Order, 30 FCC Rcd 3486, 3487, 3489, paras. 4, 8 (2015) (*Austin Order*) (affirming denial of request for waiver where down payment was one day late and winning bidder claimed that a family emergency prevented him from appearing in person at the bank to initiate the wire transfer on the due date); *see also Kankakee Valley Broadcasting Co., Inc.*, Memorandum Opinion and Order, 22 FCC Rcd 8591, 8593-98, paras. 8-16 (WTB/ASAD 2007) (*Kankakee Order*) (denying request for waiver of section 1.2107(b) and dismissing long-form application for FM construction permit where winning bidder claimed to be "unaware" of deadlines because of principal's distraction due to medical treatments).

[30] Request for Waiver at 1-2.

[31] *See BDPCS, Inc.*, Memorandum Opinion and Order, 15 FCC Rcd 17590, 17598-600, paras. 15-16 (2000), *review denied BDPCS, Inc. v FCC*, 351 F.3d 1177 (D.C. Cir. 2003) (reviewing the purposes of the down payment rule and the reasons for its strict enforcement); *Mountain Solutions Ltd., Inc. v. FCC*, 197 F.3d 512, 518 (D.C. Cir. 1999) (upholding Commission policy of strict enforcement of down payment deadlines).

[32] *Austin Order*, 30 FCC Rcd at 3491, para. 11.

[33] *Id.* at 3487, para. 4.

[34] *Id.*

[35] *Id.* at 3489, para. 8 (quoting *Mountain Solutions Ltd., Inc. v. FCC*, 197 F.3d 512, 518 (D.C. Cir. 1999)).  *See also Erie Radio Company, LLC*, Memorandum Opinion and Order, 32 FCC Rcd 3890, 3893, para. 10 (2017) (noting the

(continued….)

broader purpose by eliminating the need for the Commission to undertake an individualized analysis of the financial circumstances of each auction applicant.[36] Like Mr. Austin, Hilliary asserts that by eventually transmitting its down payment, along with an additional amount, it has demonstrated its ability to pay.[37] But the Commission has concluded that uniform, predictable, and strict enforcement of the rule best serves its purpose.[38]

13. Hilliary also contends that its particular circumstances satisfy the requirements of the second possible showing in support of waiver. Hilliary asks us to find that the challenges it faced in September 2020 following a few of its key officials' exposure to—or positive tests for—COVID-19 render strict enforcement of the down payment rule inequitable, unduly burdensome, or at odds with the public interest.[39] Again, we disagree.

14. While we are aware of the burdens and challenges imposed by the COVID-19 pandemic, we are not persuaded that Hilliary has presented any unique facts or circumstances that merit waiving its obligation to have timely submitted its down payment by the Commission's September 17, 2020, deadline.[40] Consistent with the Commission's practice, the *Auction 105 Procedures Public Notice* explicitly instructed all potential bidders that down payments would be due within ten business days after the release of the *Auction 105 Closing Public Notice*. Moreover, both the *Auction 105 Procedures Public Notice* and the *Auction 105 Closing Public Notice* warned all winning bidders to coordinate with their banks well in advance of the payment deadlines to ensure that their wire transfers could be timely initiated and completed.[41]

15. Hilliary submits that its officers were first forced to quarantine in the second week of September 2020, and that its staffing and logistical difficulties followed, culminating in the communication breakdown that caused Hilliary to miss the down payment deadline.[42] The fact that Hilliary's key personnel were either afflicted by illness or exposed to it is not novel nor is it necessarily

---

Commission's unwavering strict enforcement of the down payment deadline); *TPS Utilicom, Inc.*, Order on Reconsideration, 18 FCC Rcd 2516, 2520, para. 9 (2003) (denying request for waiver where petitioner submitted down payments for some but not all licenses where it was the high bidder); *Kankakee Order*, 22 FCC Rcd at 8596-97, para. 13.

[36] *Id*. at 3491, para. 11.

[37] *See* Request for Waiver at 2-3. *See also Austin Order*, 30 FCC Rcd at 3491, para. 11 (rejecting this argument because "[i]f [it] were correct, any winning bidder that could show it had had the required amount of funds in its bank account at the time the initial down payment was due could justify a request for waiver of the deadline seeking an extension for any length of time.")

[38] *See id*.

[39] Request for Waiver at 2.

[40] Hilliary's mere statement that its circumstances are "narrowly unique and highly unusual," and thus, not likely to be encountered by other Commission applicants, is not sufficient to satisfy the requirements of *WAIT Radio*. *See Northeast Cellular*, 897 F.2d at 1166-67 (explaining that, if we deviate from our general rule to grant a waiver, we "must explain why deviation better serves the public interest and articulate the nature of the special circumstances to prevent discriminatory application and to put future parties on notice as to its operation").

[41] *Auction 105 Procedures Public Notice,* 35 FCC Rcd at 2182 (advising potential Auction 105 participants with regard to upfront payments to discuss arrangements with their bankers "several days" before executing their wire transfers and to allow sufficient time for transfers to be initiated and completed before that deadline); *Auction 105 Closing Public Notice,* 35 FCC Rcd at 9291.

[42] Request for Waiver at 2.

unique or unexpected six months after the onset of the COVID-19 pandemic.[43]  To that end, we note that the *Auction 105 Procedures Public Notice* was released and available to prospective bidders more than six months before the eventual down payment deadline, and more than 200 winning bidders met that deadline, despite the ongoing pandemic.[44]  We conclude that Hilliary's failure to meet its first post-auction obligation does not constitute a special circumstance that warrants a deviation from our general rule.

16.  Nor are we persuaded that applying the rule to Hilliary in these circumstances would be contrary to the public interest.  Hilliary asserts that it is actively exploring CBRS spectrum investment and deployment opportunities to serve communities on Tribal lands in Oklahoma.[45]  Without the waiver, Hilliary says, those efforts will be delayed.  We are not convinced that Hilliary's asserted intent outweighs the public interest benefit that is attendant to consistent enforcement of the Commission's competitive bidding rules.  As noted above, the Commission has never granted a request for waiver of a down payment deadline, and we decline to do so here.  We further observe that Hilliary's asserted intent to benefit communities on Tribal lands in Oklahoma are similar to public interest arguments that the Commission has consistently rejected in declining to grant other requests for waiver of its competitive bidding rules.[46]

17.  None of Hilliary's arguments merit that we waive the down payment deadline.  Accordingly, we deny Hilliary's request.

## IV.    INTERIM DEFAULT PAYMENT

18.  The Commission's rules provide that a bidder who fails to remit the required final payment for a license for which it was the high bidder is subject to a default payment.[47]  The default payment has two components.  The first component is a deficiency payment, which is assessed if the subsequent winning bid the next time a license for the spectrum is won is lower than the defaulted bid.[48]  The deficiency payment is the difference between the bidder's net defaulted bid and the subsequent net winning bid, or the difference between the bidder's gross defaulted bid and the subsequent gross winning

---

[43] *See Kankakee Order*, 22 FCC Rcd at 8594, para. 9 ("The Commission has held that something as common as an employee's illness does not rise to the level of a unique or unusual circumstance, warranting special consideration by the Commission.") (internal quotation marks omitted).  *See also* Proclamation No. 9994, 85 FR 153337 (Mar. 13, 2020), https://www.whitehouse.gov/presidential-actions/proclamation-declaring-national-emergency-concerning-novel-coronavirus-disease-covid-19-outbreak/.

[44] *See Wireless Telecommunications Bureau Announces that Applications for Auction 105 Licenses are Accepted for Filing*, Public Notice, 35 FCC Rcd 14080 (WTB 2020); *Wireless Telecommunications Bureau Announces Additional Applications for Auction 105 Licenses are Accepted for Filing*, Public Notice, 36 FCC Rcd 798 (WTB 2021).

[45] Request for Waiver at 3.

[46] *See, e.g., Southern Communications Systems, Inc.*, Second Memorandum Opinion and Order, 16 FCC Rcd 18357, 18361, para. 9 (2001) ("[E]nforcing the Commission's payment rules . . . serves the public interest better than relying on the wholly unsubstantiated possibility that [petitioner] might have provided service in its license area sooner than the successor licensees will."); *see also Spectrum IVDS, L.L.C.*, Order, 23 FCC Rcd 8800, 8807, para. 19 (2008) (Commission noted that "[a]llowing winning bidders to retain licenses when they are unable to pay their winning bids prevents the auction process from assigning licenses to those parties best able to serve the public."); *AirCom Consultants, Inc.*, Order on Reconsideration, 18 FCC Rcd 1806, 1810-11 (WTB 2003) (following Commission precedent in rejecting the petitioner's argument that the down payment and default rules should be waived to provide communications services to underserved tribal lands and rural areas).

[47] 47 CFR §§ 1.2109(b), 1.2104(g)(2).

[48] 47 CFR § 1.2104(g)(2)(i).

bid, whichever results in a lower payment.[49] The second component of the default payment is an additional payment, which, pursuant to the rule in effect at the time of Auction 105, is equal to twenty percent (20%) of the defaulter's bid, or the subsequent winning bid, whichever is less.[50] In the event that the subsequent winning bid is greater than or equal to the defaulted bid, the total default payment is equal to twenty percent (20%) of the original defaulted bid.

19. Section 1.2109(b) of the Commission's rules provides that a winning bidder who fails to remit the required down payment within ten business days after the Commission has declared competitive bidding closed will be deemed to have defaulted, its application will be dismissed, and it will be liable for the applicable default payment obligations specified in 47 CFR § 1.2104(g).[51] Although we cannot determine Hilliary's total default payment at this time, we will assess an interim default payment owed by Hilliary, amounting to 20 percent of its defaulted net bid for the licenses, or $161,193.00.[52] Pursuant to section 1.2106(e) of the Commission's rules, we will apply Hilliary's payment on deposit to satisfy this interim default payment obligation.[53]

## V. ORDERING CLAUSES

20. Accordingly, IT IS ORDERED, pursuant to Sections 4(i) and 309 of the Communications Act of 1934, as amended, 47 U.S.C. §§ 154(i) and 309, and Section 1.925 of the Commission's rules, 47 CFR § 1.925, that Hilliary Acquisition Corp 2016, LLC's Request for Waiver and Extension, filed November 4, 2020, is DENIED.

21. IT IS FURTHER ORDERED, pursuant to sections 4(i) and 309 of the Communications Act of 1934, as amended, 47 U.S.C. §§ 154(i) and 309, and sections 1.2107(b), 1.2109(b), and 1.2104(g), of the Commission's rules, 47 CFR §§ 1.2107(b), 1.2109(b), and 1.2104(g), that Hilliary Acquisition Corp 2016, LLC is ASSESSED an interim default payment in the amount of $161,193.00 for the 42 Priority Access Licenses in the 3550-3650 MHz portion of the 3.5 GHz band for which it was the winning bidder in Auction 105.[54]

22. IT IS FURTHER ORDERED, pursuant to sections 1.2104 and 1.2106 of the Commission's rules, 47 CFR §§ 1.2104 and 1.2106, that Hilliary Acquisition Corp 2016, LLC's funds on deposit will be applied toward satisfying its interim default payment obligation.

23. IT IS FURTHER ORDERED, pursuant to section 4(i) of the Communications Act of 1934, as amended, 47 U.S.C. § 154(i), and section 1.2104(g) of the Commission's rules, 47 CFR § 1.2104(g), that Hilliary Acquisition Corp 2016, LLC will be subject to the balance of the default payment specified in section 1.2104(g) of the Commission's rules, 47 CFR § 1.2104(g), after the spectrum associated with the licenses is won in a subsequent auction and the full default payment amount is determined.

---

[49] *Id.*

[50] 47 CFR § 1.2104(g)(2)(ii); *see Auction 105 Procedures Public Notice,* 35 FCC Rcd at 2204, paras. 227-28.

[51] 47 CFR §§1.2104(g) and 1.2109(b).

[52] Consistent with Commission precedent, the disposition of the remaining amount of monies on deposit with the Commission related to this matter will be addressed in a subsequent letter to the payor of record, after licenses covering the same spectrum are re-auctioned and the final default payment can be calculated. *See AirCom Communication Consultants, Inc.*, Order, 16 FCC Rcd 17685, 17691 n.47 (WTB 2001), *recon. denied sub nom.*, AirCom Consultants, Inc., *Order on Reconsideration*, 18 FCC Rcd 1806 (WTB 2003). *See also* 47 CFR § 1.2104(g)(2).

[53] *See* 47 CFR § 1.2106(e). *See also TPS Order,* 18 FCC Rcd at 2516.

[54] Attachment A lists those 42 licenses upon which Hilliary has defaulted.

24.  IT IS FURTHER ORDERED that, pursuant to sections 0.331 and 1.2109 of the Commission's rules, 47 CFR §§ 0.331 and 1.2109, the long-form applications of Hilliary Acquisition Corp 2016, LLC, File Numbers 0009227434 and 0009227450, are DISMISSED.

25.  This action is taken pursuant to delegated authority under sections 0.21(m), 0.131(c), 0.271 and 0.331 of the Commission's rules, 47 CFR §§ 0.21(m), 0.131(c), 0.271, 0.331.

FEDERAL COMMUNICATIONS COMMISSION

Jonathan M. Campbell
Chief, Auctions Division
Office of Economics and Analytics

Roger Noel
Chief, Mobility Division
Wireless Telecommunications Bureau

**Attachment A**

This table provides a list of the 42 Priority Access Licenses for which Hilliary Acquisition Corp 2016, LLC, was the winning bidder in Auction 105.

| Market Number | Market Description | File Number |
|---|---|---|
| D48009 | Archer, TX | 0009227434 |
| D48009 | Archer, TX | 0009227434 |
| D48077 | Clay, TX | 0009227434 |
| D48077 | Clay, TX | 0009227434 |
| D48087 | Collingsworth, TX | 0009227434 |
| D48087 | Collingsworth, TX | 0009227434 |
| D48101 | Cottle, TX | 0009227434 |
| D48101 | Cottle, TX | 0009227434 |
| D48155 | Foard, TX | 0009227434 |
| D48155 | Foard, TX | 0009227434 |
| D48197 | Hardeman, TX | 0009227434 |
| D48197 | Hardeman, TX | 0009227434 |
| D48247 | Jim Hogg, TX | 0009227434 |
| D48247 | Jim Hogg, TX | 0009227434 |
| D48269 | King, TX | 0009227434 |
| D48269 | King, TX | 0009227434 |
| D48485 | Wichita, TX | 0009227434 |
| D48485 | Wichita, TX | 0009227434 |
| D48487 | Wilbarger, TX | 0009227434 |
| D48487 | Wilbarger, TX | 0009227434 |
| D48505 | Zapata, TX | 0009227434 |
| D48505 | Zapata, TX | 0009227434 |
| D40015 | Caddo, OK | 0009227450 |
| D40015 | Caddo, OK | 0009227450 |
| D40031 | Comanche, OK | 0009227450 |
| D40031 | Comanche, OK | 0009227450 |
| D40033 | Cotton, OK | 0009227450 |
| D40033 | Cotton, OK | 0009227450 |
| D40057 | Harmon, OK | 0009227450 |
| D40057 | Harmon, OK | 0009227450 |
| D40067 | Jefferson, OK | 0009227450 |
| D40067 | Jefferson, OK | 0009227450 |
| D40075 | Kiowa, OK | 0009227450 |
| D40075 | Kiowa, OK | 0009227450 |
| D40077 | Latimer, OK | 0009227450 |
| D40077 | Latimer, OK | 0009227450 |
| D40127 | Pushmataha, OK | 0009227450 |
| D40127 | Pushmataha, OK | 0009227450 |
| D40137 | Stephens, OK | 0009227450 |
| D40137 | Stephens, OK | 0009227450 |
| D40141 | Tillman, OK | 0009227450 |
| D40141 | Tillman, OK | 0009227450 |

# Refund Form

To ensure that refunds are processed in an expeditious manner, the Commission is requesting that all pertinent information below be submitted to the FCC by FAX to 202-418-2843. For additional information on refunds, call the FCC Revenue & Receivables Operations Group/Auctions using the telephone number provided in the Procedures Public Notice for the auction associated with this refund request.

* Indicates required field

* **Auction:** Auction 105 3.5 GHz ⌄

## CORES Information

* FCC User Name: ▉▉▉▉▉▉▉▉▉▉

* FRN: 0025853409

## Account Holder (Form 159 Payer)

If a company name is entered, the first and last name fields are not required.

*First Name:

Middle Initial:

*Last Name:

* Company: Hilliary Acquisition Corp. 2016, LLC

* Bank Name: ▉▉▉▉▉▉

* Routing Number: ▉▉▉▉▉▉

* Account Number: ▉▉▉▉▉▉

## Bank Contact

* Address Line 1: ▉▉▉▉▉▉▉

Address Line 2:

* City: Lawton

* State: Oklahoma ⌄

* Zip Code: 73505

* Phone:
area code exchange last four Ext.
580   529   5000   902

## Correspondent Bank (if applicable)

Bank Name:

Routing Number:

Account Number:

## Authorization

* Authorized Signature: X _Sign Here_

* Signature Name Printed: Dean Pennello

**Print this page.** Then, sign and submit printed page by FAX to FCC at 202-418-2843. For additional information on refunds, call the FCC Revenue & Receivables Operations Group/Auctions using the telephone number provided in the Procedures Public Notice for the auction associated with this refund request.

Add. 13

# CERTIFICATE OF SERVICE

I hereby certify that on December 5, 2024, I electronically filed the foregoing document with the Clerk of the Court for the U.S. Court of Appeals for the District of Columbia Circuit using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

I further certify that I have caused the foregoing petition to be served by courier and by electronic mail on the Commission as follows:

**Federal Communications Commission**
Attn: General Counsel
45 L Street N.E.
Washington, D.C. 20554
litigationnotice@fcc.gov

December 5, 2024                    Respectfully submitted,

                                   /s/ Ryan L. Gillcrist
                                   Ryan L. Gillcrist
                                   Womble Bond Dickinson (US) LLP
                                   2001 K Street, NW
                                   Suite 400 South
                                   Washington, DC 20006