No. 24-1371

# IN THE UNITED STATES COURT OF APPEALS FOR THE DISTRICT OF COLUMBIA CIRCUIT

IN RE:

HILLIARY ACQUISITION CORP. 2016, LLC,

Petitioners.

**REPLY TO OPPOSITION**

Caressa D. Bennet
Michael R. Bennet
Ryan L. Gillcrist
Womble Bond Dickinson (US) LLP
2001 K Street, NW
Suite 400 South
Washington, DC 20006
Telephone: (202) 467-6900
Facsimile: (202) 467-6910
Carri.bennet@wbd-us.com

*Counsel for Petitioner*
*Hilliary Acquisition Corp. 2016, LLC*

Table of Contents

Argument ..................................................................................................1

I. The FCC's Refund Order Does Not Provide Hilliary with an Adequate Alternative Remedy................................................................2

II. Precedent Requires that the FCC Issue the Requested Refund.............3

III. Even if the FCC were to Regain Auction Authority, a Reauction of the Subject Licenses May Not Occur for Years...........................................7

IV. The Refund Order's Public Interest Argument is Unpersuasive ..........9

Conclusion ..............................................................................................12

Table of Authorities

Cases

*Am. Hosp. Ass'n v. Burwell*,
    812 F.3d 183 D.C. Cir. 2016)......................................................................................3

*American Rivers and Idaho Rivers United*,
    372 F.3d 413 (D.C. Cir. 2004) ...................................................................................9

*Melody Music, Inc. v. FCC*,
    345 F.2d 730 (D.C. Cir. 1965) ...................................................................................4

Regulations

47 C.F.R. § 1.2104(g)(2).................................................................................................7

Other Authorities

*Auction of Priority Access Licenses for the 3550-3650 MHz Band, 271 Applicants Qualified to Bid in Auction 105*, Public Notice, 35 FCC Rcd 6672 (2020) ..............1

*Final Default Payment Obligation for Auction 98, The ERIE Radio Company, LLC*, Letter Order, 37 FCC Rcd 14010 (2022)...........................................................4, 9

*Final Default Payment Amount for Auction 62 Construction Permit FM027-A (Boonville, CA), Wilbur Johnson*, Letter Order, 37 FCC Rcd 13094 (OEA 2022)...9

*Hilliary Acquisition Corp 2016, LLC; Request for Waiver of Down Payment Deadline for Auction 105*, Memorandum Opinion and Order, DA 22-629 (July 18, 2022) ......................................................................................................................10

*Hilliary Acquisition Corp 2016, LLC Request for Expedited Auction Refund*, Letter Order, DA 25-61 (Jan. 16, 2025) ........................................................................2

*In the Matter of Request for Waiver of Section 1.2104(g) of the Commission's Rules filed by Grand Connectivity L.L.C.*, Order, DA 99-1726
(Aug. 27, 1999) ..................................................................................................3, 4, 6

*TPS Utilicom, Inc.*, Letter Order, 22 FCC Rcd 16251 (WTB 2007) .........................9

**Argument**

On December 5, 2024, Hilliary Acquisition Corp. 2016, LLC ("Petitioner" or "Hilliary"), filed a Petition for Writ of Mandamus ("Petition") to compel the Federal Communications Commission ("FCC" or "Commission") to issue a refund of certain monies held on deposit pertaining to a 2020 FCC auction for Citizens Broadband Radio Service ("CBRS") Priority Access Licenses ("Auction 105").[1] Petitioner requested that the agency return $644,772.00 of the $841,128.25 on deposit (*i.e.*, the total amount on deposit less the upfront payment of $102,700.00 submitted by Petitioner on June 19, 2020[2], the down payment true up amount of $58,493.00[3], and a five-percent late payment of $35,163.25). On January 21, 2025, the FCC filed an Opposition to the Petition ("Opposition").[4] Petitioner submits this Reply to the Commission's Opposition.

---

[1] *See* Petition for Writ of Mandamus, In re: Hilliary Acquisition Corp. 2016, LLC, *opposition filed*, No. 24-1371 (D.C. Cir. Dec. 5, 2024) ("Petition").
[2] *See Auction of Priority Access Licenses for the 3550-3650 MHz Band, 271 Applicants Qualified to Bid in Auction 105*, Public Notice, 35 FCC Rcd 6672, 6691 (2020).
[3] While Petitioner failed to timely submit its required down payment true up of $58,493.00 for the licenses it won in Auction 105, on October 16, 2020, Petitioner submitted an additional $738,428.25 payment to cover the down payment true up, final payment, and a late fee of five percent of the amount due.
[4] *See* Opposition of the FCC to Petition for Writ of Mandamus, In re: Hilliary Acquisition Corp. 2016, LLC, *opposition filed*, No. 24-1371 (D.C. Cir. Jan. 21, 2025) ("Opposition").

**I.      The FCC's Refund Order Does Not Provide Hilliary with an Adequate Alternative Remedy.**

On March 28, 2023, Petitioner submitted an informal request for refund of the funds unlawfully held on deposit.[5] This request remained pending until the FCC's Wireless Telecommunications Bureau, Mobility Division, and Office of Economics and Analytics, Auctions Division, issued a joint Letter Order ("Refund Order") on January 16, 2025, denying the request.[6] The FCC now argues that with the grant of such Refund Order, mandamus relief is unavailable to Hilliary because an adequate alternative remedy now exists.[7] Petitioner, the Commission asserts, can now seek review of the Refund Order from the full Commission, and if its refund request is again denied, can petition for judicial review of that decision.[8] However, the Refund Order does not resolve the issues raised in Hilliary's Petition. Instead, it only addresses whether Petitioner is entitled to a *full refund* of all money held by the FCC, and not whether Hilliary is entitled to the excess amounts paid to

---

[5] *See* Letter from Caressa D. Bennet, Robert A. Silverman, and Stephen T. Sharbaugh, Counsel for Hilliary Acquisition Corp 2016, LLC, to Jonathan M. Campbell, Chief, Auctions Division, Office of Economics and Analytics (Mar. 28, 2023) ("Letter").
[6] *See Hilliary Acquisition Corp 2016, LLC Request for Expedited Auction Refund*, Letter Order, DA 25-61 (Jan. 16, 2025) ("Refund Order").
[7] *See* Opposition at 3, 11–12.
[8] *Id.* at 3.

the Commission, an issue raised in the Petition.[9]  Because the Commission did not address the issue of whether Hilliary is entitled to such excess amounts paid to the FCC in the Refund Order, there is still "no adequate alternative remedy" other than to seek a writ of mandamus.  *Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 189 (D.C. Cir. 2016).  As such, Hilliary is still entitled to mandamus relief.

## II.     Precedent Requires that the FCC Issue the Requested Refund.

In another spectrum auction where a winning bidder defaulted, the Commission has returned the excess portion of an upfront payment prior to reauction after assessing an initial default penalty.[10]  After submitting an upfront payment of $150,000, Grand Connectivity L.L.C. ("Grand Connectivity"), a high bidder on seven licenses with total net bids of $2,674,650 in Auction 23, failed to submit a required down payment of $384,930.00 in that auction, thereby defaulting and triggering a default penalty.[11]  The Commission determined that the amount on

---

[9] Refund Order at 3 n.25 ("Hilliary's request for its 'remaining monies on deposit' does not expressly address whether it seeks the return of all its funds, including the interim default payment amount of $161,193.")  The FCC misinterprets Hilliary's request.  Hilliary expressly asked for a refund of "Hilliary's *remaining* monies on deposit." (*i.e.*, the amount in excess of what is required under the rules (*i.e.,* in excess of the combined amount of the upfront payment, down payment, and late fee penalty). Letter at 1 (emphasis added).
[10] *See In the Matter of Request for Waiver of Section 1.2104(g) of the Commission's Rules filed by Grand Connectivity L.L.C.*, Order, DA 99-1726 (Aug. 27, 1999) ("*Grand Connectivity*").
[11] *Id.* at 2.

3

deposit was sufficient to satisfy Grand Connectivity's initial default penalty of $80,241.[12] After the Commission calculated and assessed a three-percent default penalty, the Commission then refunded $69,760.50, Grand Connectivity's remaining amount on deposit.[13] The Commission must afford Hilliary the same treatment that it afforded the defaulting bidder in that case, by refunding the excess portion of money on deposit (i.e., the $644,772.00).[14]

---

[12] *Id.* at 6.

[13] *Id.* The $69,760.50 represents the balance of Grand Connectivity's upfront payment after the application of the FCC's three percent default payment rule. *Id.* at 1 n.3.

[14] The FCC may not treat Hilliary differently than similarly situated applicants for spectrum. *See Melody Music, Inc. v. FCC*, 345 F.2d 730, 731-33 (D.C. Cir. 1965). The Opposition references a "practice" of the FCC to hold any payments deposited by defaulting winning bidders to help ensure that final default payments, once calculated, are paid. Opposition at 9 n.2 (*citing Application of the ERIE Radio Company, LLC*, 32 FCC Rcd 2890, 3897, ¶ 20, n.56 (MB & WTB 2017)) ("*Erie*"). Any such "practice" has no bearing here as it is an informal practice and not dictated by the FCC's rules. Moreover, applying the isolated "practice" in this case would be arbitrary and capricious given the FCC's lack of auction authority and the time required to conduct a reauction. With respect to *Erie*, Auction 98 closed August 6, 2015 and a reauction of the construction permit covering the same spectrum closed August 5, 2021, a period of slightly under six years. *See Final Default Payment Obligation for Auction 98, The ERIE Radio Company, LLC*, Letter Order, 37 FCC Rcd 14010, 14010–11. In that case, the Commission had the ability to conduct a reauction because it had auction authority. Here, in contrast, given that approximately four and one-half years have already elapsed since Auction 105 closed, and that there is no imminent path for the Commission to regain auction authority, the Commission lacks the ability to conduct a reauction within that same six-year timeframe. Even if auction authority were to be restored tomorrow, there are several additional steps that must occur prior to reauction. Among other actions, the Commission must release a public notice seeking comment on auction procedures (approximately six to eight months prior

By the FCC's reasoning in its Opposition, it should have held onto the remaining amount of the deposit in *Grand Connectivity* to ensure that Grand Connectivity paid the final default amount once determined following a reauction. But it did not. Instead, it stated that *only after* the licenses are reauctioned and the actual default penalty (if any) can be determined, will Grand Connectivity be

---

to auction) and a procedures public notice (approximately four to five months prior to auction). *See Pre-Auction Timeline*, (Jan. 5, 2023), *available* at https://www.fcc.gov/pre-auction-timeline (last viewed Jan. 5, 2023). Additionally, if a fast-tracked effort that restores auction authority were to occur, the FCC would have to prioritize a reauction of the Auction 105 defaulted licenses over any other auction to meet the same six-year timeline. When *Erie* was decided, the Commission had auction authority that was valid until September 30, 2022 and its reauction took place within the timeframe of the FCC possessing auction authority. No one could envision that it would be allowed to expire and not be renewed by Congress. In the 117th Congress, attempts to extend the FCC's auction authority proved problematic although short extensions were granted, extending it from September 30, 2022 to December 31, 2022 and then again until March 9, 2023 when it ended. Congress' attempt to restore the FCC's auction authority during the 118th Congress were met with opposition and failed. *See The Federal Communications Commission's Spectrum Auction Authority: History and Options for Reinstatement* (Sep. 12, 2023), *available* at https://crsreports.congress.gov/product/pdf/R/R47578 (last viewed Jan. 28 2025). The 119th Congress has seen one House bill introduced to restore the FCC's auction authority and no companion Senate bill. *See H.R. 651 – To require the Federal Communications Commission to auction spectrum in the band between 1.3 gigahertz and 13.2 gigahertz, and for other purposes*, https://www.congress.gov/bill/119th-congress/house-bill/651/text?s=10&r=1&q=%7B%22search%22%3A%22spectrum%22%7D (last viewed Jan. 28, 2025). Despite the FCC's hopes of having its auction authority restored, there is no imminent possibility of auction authority being restored in a timely manner that would allow Hilliary to seek redress of its grievance through a reauction.

subject to the balance of the payment specified in the FCC's auction rules.[15] The FCC correctly noted that the purpose of the default payment provisions "is to assure that the winning bidder is obligated to pay the full amount of its winning bid."[16] In other words, the purpose of the penalty provision is to *obligate* the defaulting bidder to make the FCC whole to the extent necessary *following* a reauction, and *not* to require that such payment be made in advance and essentially be held in escrow by the FCC.

The Opposition notes that Hilliary had assumed a "binding obligation" to pay the full amount of its winning bids, and the FCC's default payment method "can only reduce (but not eliminate) that obligation depending on the winning bids for relevant licenses in a future auction."[17] Hilliary does not dispute its obligation to pay the full amount of its winning bids (as modified by any applicable deficiency payment) *at the time it is due.* Nor does Hilliary dispute that its payment obligation can only be reduced and not eliminated. Hilliary only disputes the FCC's contention that it can hold on indefinitely to an overpayment that exceeds the penalty amounts that Hilliary is *currently* required to have paid the FCC.

---

[15] *Grand Connectivity* ¶¶ 9-10.
[16] *Id.* ¶ 5.
[17] Opposition at 8-9.

6

Under the FCC's rules, *after* reauction occurs, defaulting applicants are required to pay the difference between the amount of the initial winning bid and the amount a spectrum license sells for in the reauction. The FCC applies the upfront and down payment amounts. If the amount of the of the combined upfront and down payment amounts are not enough to cover the difference between the original bid and what the license ultimately sells for, the applicant *then* pays the difference.[18] Specifically, the FCC's rules require defaulting applicants to make a payment equal to the difference between the amount of their bids and the amount of subsequent winning bids for license(s) covering the same spectrum as the licenses covered by the winning bids.[19] Here, the FCC has taken the position that Hilliary must pay for the difference *before* reauction has occurred and before that amount has been determined. By keeping the excess amount over the down payment instead of refunding such amount, the FCC is going beyond what is required by its rules and acting inconsistently with its treatment of a similarly situated applicant.

III. **Even if the FCC were to Regain Auction Authority, a Reauction of the Subject Licenses May Not Occur for Years.**

The FCC continues to argue that its hold on Hilliary's money is only temporary because it plans to hold a reauction which will determine the final

---

[18] *See* 47 C.F.R. § 1.2104(g)(2) (incorporating § 1.2104(g)(1)).
[19] *Id.*

penalty amount, but as the Petition points out, the FCC's spectrum auction authority lapsed on March 10, 2023 after Congress failed to agree on the terms of extending that authority,[20] and therefore a reauction may never occur. In its Opposition, the FCC asserted that a subsequent auction with respect to the spectrum is *possible* if authorized by Congressional action.[21] However, there remains no way of knowing when the FCC's auction authority will be reinstated by Congress or even if it will be reinstated by Congress at all. Even if the FCC regains its spectrum authority, after an indeterminate amount of time, there will likely be yet another significant delay in re-auctioning the Auction 105 licenses that Petitioner defaulted on, which would further delay a refund of the funds on deposit.

Even if a reauction of the Auction 105 licenses occurs, it may not occur for years.[22] In fact, the FCC's own examples indicate that, even with restored auction authority, such a lengthy delay would likely occur. As the FCC acknowledges, on certain occasions, a subsequent auction of the same spectrum has not occurred for

---

[20] *See FCC's Spectrum Auction Authority Lapses for First Time*, Inside Towers (Mar. 13, 2023), *available at* https://insidetowers.com/fccs-spectrum-auctionauthority-lapses-for-first-time/ (last viewed January 28, 2025).
[21] *See* Opposition at 10.
[22] *Id*. at 2 ("The amount of a default payment depends in part on the winning bid in a subsequent auction of licenses to use the spectrum covered by a defaulted-on winning bid, which can occur *years* after the default") (emphasis added).

8

more than five years, and in one case, for 15 years![23] The FCC has already held Hilliary's funds since October 16, 2020, a period of over four years. Petitioner having to wait additional time, perhaps even 15 years for a reauction to occur before it can receive a refund of the overpayment would be egregious and unreasonable and the uncertain timeline for a refund constitutes a basis for the Court to issue a writ of mandamus to refund the excess amount being held in violation of the Commission's own rules.[24]

**IV.    The Refund Order's Public Interest Argument is Unpersuasive.**

The FCC asserted that its retention of monies on deposit helps it assure payment of "to-be-determined final default obligations" and protects the public against the possibility that a defaulter will prove unable to satisfy the final default

---

[23] *See id.* at 10; Refund Order at 5. *See Final Default Payment Obligation for Auction 98, The ERIE Radio Company, LLC*, Letter Order, 37 FCC Rcd 14010, 14010–11 (2022) (Auction 98 closed on August 6, 2015 and the construction permit covering the same spectrum was won in a subsequent reauction which closed August 5, 2021); *Final Default Payment Amount for Auction 62 Construction Permit FM027-A (Boonville, CA), Wilbur Johnson*, Letter Order, 37 FCC Rcd 13094 (OEA 2022) (Auction 62 closed on January 31, 2006 and a construction permit for the underlying allotment was won in Auction 109, which closed on August 5, 2021); *TPS Utilicom, Inc.*, Letter Order, 22 FCC Rcd 16251 (WTB 2007) (Auction 35 closed on January 26, 2001 and the subsequent auction for the license that TPS Utilicom defaulted on was re-auctioned in Auction 71, which closed May 21, 2007).

[24] *See American Rivers and Idaho Rivers United*, 372 F.3d 413, 419 (D.C. Cir. 2004) (finding that FERC's delay of six years in responding to a petition to be egregious).

obligations when that amount can be finally determined and assessed.[25] Once again, this contention is unpersuasive. Hilliary submitted a total payment of $841,128.25 to demonstrate that it has the financial ability to pay the amount it bid for the licenses. In fact, such amount covered the down payment, final payment, and even a "late fee" of five percent of the amount due.[26]

Hilliary and its affiliated rural telephone companies[27] are regulated by the FCC. The companies have been in business for decades. They are participants in numerous FCC universal service and USDA Rural Utilities Service loan and grant programs. The public would be better served if Hilliary were able to invest the monies on deposit in rural broadband access than if the funds were to be held indefinitely by the Commission until a reauction occurs. The FCC found unpersuasive Hilliary's assertion that it would invest the refunded money in broadband access because there is "no guarantee" that Hilliary will do so or that

---

[25] Refund Order at 7.
[26] *See Hilliary Acquisition Corp 2016, LLC; Request for Waiver of Down Payment Deadline for Auction 105*, Memorandum Opinion and Order, DA 22-629 (July 18, 2022).
[27] Hilliary's affiliates include: (1) Medicine Park Telephone Company, Inc.; (2) Oklahoma Western Telephone Company, Inc.; (3) Phoenix Long Distance, Inc.; (4) Wichita Online, LLC; (5) Oklahoma Fiber Network, LLC; (6) Southern Plains Cable, LLC; (7) Texhoma Fiber, LLC; (8) Southwest Oklahoma Telephone, Inc.; (9) Tatum Telephone Company, Inc.; (10) Electra Telephone Company, Inc.; (11) Border to Border, Inc.; (12) Prairieburg Telephone Company, Inc.; (13) Lipan Telecommunications, Inc.; (14) Phoenix Communications Systems, Inc.; and (15) Star Search Rural Television Company.

the investment ultimately would further the public interest.[28] While there is nothing that is certain beyond "death and taxes,"[29] Hilliary has demonstrated its commitment to providing broadband access in its affiliates' rural telephone company service territories in Oklahoma, Texas, and Iowa. Its affiliates receive high cost support from the Universal Service Fund and have made commitments through the FCC's various high cost fund programs throughout the past two decades, and are committed to do so through those programs as required by the FCC's regulatory regime. Accordingly, the FCC has numerous mechanisms at its disposal (*e.g.*, withholding universal service support) to ensure that Hilliary meets its financial obligations. It is a core component of the FCC's broadband policy that investing in the expansion of broadband access benefits the public[30] and the FCC provides no basis for its belief that Hilliary's planned buildout will not do so, other than the fact that no one can "guarantee" the future. Meanwhile, the FCC is well aware that there is no guarantee that the Commission will regain its auction authority or that a reauction of the Auction 105 licenses will take place. As discussed in Hilliary's Petition, funds on deposit would have been used to finance

---

[28] Opposition at 11.
[29] *See* NCC Staff, *Benjamin Franklin's last great quote and the Constitution* (Nov. 13, 2003), *available at* https://constitutioncenter.org/blog/benjamin-franklins-last-great-quote-and-the-constitution (last viewed January 28, 2025).
[30] *See Connecting America: The National Broadband Plan* (Mar. 17, 2010), *available at* transition.fcc.gov/national-broadband-plan/national-broadband-plan.pdf (last viewed January 27, 2025).

a buildout of broadband service to southeastern Oklahoma, within Choctaw Nation, in rural parts of Leflore County, an area currently unserved with broadband service.[31] The broadband project would have served more than 200 homes and extended ten miles of fiber into these unserved areas.[32] The public, and particularly, those individuals who live, work, and travel, through southeastern Oklahoma, would not be harmed by the FCC if it were to issue a refund to Hilliary. Instead, they are being harmed because the money cannot be invested in broadband buildout.

## V. Conclusion

For these reasons, this Court should grant this Petition. Ultimately, the FCC still has provided no legal basis for continuing to withhold the funds to which Petitioner is entitled.

Respectfully submitted,

/s/ Caressa D. Bennet
Caressa D. Bennet
Michael R. Bennet
Ryan L. Gillcrist
Womble Bond Dickinson (US) LLP
2001 K Street, NW
Suite 400 South
Washington, DC 20006

*Attorneys for Petitioners*

---

[31] *See* Petition at 10.
[32] *Id.* at 11.

Dated: January 28, 2025

# CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g)(1), the undersigned certifies that this Reply complies with the applicable typeface, type style, and type-volume limitations. This Reply was prepared using proportionally spaced type (Times New Roman, 14 point). Exclusive of the portions exempted by Federal Rule of Appellate Procedure 32(f) and D.C. Circuit Rule 32(e)(1), this Reply contains 3,142 words. This certificate was prepared in reliance on the word-count function of the word processing system used to prepare this Reply.

January 28, 2025                               Respectfully submitted,

                                               /s/ Ryan L. Gillcrist
                                               Ryan L. Gillcrist
                                               Womble Bond Dickinson (US) LLP
                                               2001 K Street, NW
                                               Suite 400 South
                                               Washington, DC 20006

# CERTIFICATE OF SERVICE

I hereby certify that, on January 28, 2025, I electronically filed the foregoing with the Clerk for the United States Court of Appeals for the District of Columbia Circuit using the appellate CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF System.

January 28, 2025

Respectfully submitted,

/s/ Ryan L. Gillcrist
Ryan L. Gillcrist
Womble Bond Dickinson (US) LLP
2001 K Street, NW
Suite 400 South
Washington, DC 20006
Telephone: (202) 857-4441
Facsimile: (202) 467-6910
Ryan.gillcrist@wbd-us.com