# IN THE UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

IN RE: HILLIARY ACQUISITION CORP. 2016, )
LLC, )
                            )
        *Petitioners.*        )
                            )   No. 24-1371
                            )
                            )
                            )
                            )
                            )
                            )

## PETITIONER'S MOTION TO HOLD CASE IN ABEYANCE

Petitioner Hilliary Acquisition Corp. 2016, LLC ("Hilliary") respectfully moves the Court to hold this matter in abeyance for a period of 60 days to allow the Federal Communications Commission ("FCC" or "Commission") to consider Hilliary's Petition for Reconsideration filed with the Commission on February 18, 2025.

Counsel for Hilliary consulted with counsel for the FCC this afternoon to determine whether the FCC will support this Motion. FCC counsel followed up by email stating that the FCC opposes the Motion.

In support of its request, Hilliary states the following:

1.     On December 5, 2024, Hilliary filed a Petitioner for Writ of Mandamus ("Mandamus Petition") with this Court. ECF No. 2088844. In the Mandamus

Petition, Hilliary requested that this Court order the Commission to refund a portion of Hilliary's auction payments that Hilliary paid to the Commission on October 16, 2020, a refund amount of $644,722.00.

2.      As noted in the Mandamus Petition, Hilliary submitted an informal request for refund to the FCC on March 28, 2023, just 18 days after the Commission's spectrum authority lapsed after Congress failed to agree on the terms of extending that authority. Mandamus Petition 4.

3.      The FCC then proceeded to sit on Hilliary's informal request.

4.      Given the length of time that Hilliary heard nary a peep from the FCC, Hilliary was left with no other adequate remedies and therefore filed the Mandamus Petition with this Court.

5.      Fourteen days after Hilliary filed the Mandamus Petition, this Court issued an order on December 19, 2024 directing the Commission to file a response within 30 days. ECF No. 2090354.

6.      Then, coincidentally (or not), the FCC staff, acting on delegated authority, sent a letter to counsel for Hilliary denying Hilliary's informal request for refund. *See* Letter from Mary Lovejoy and Roger Noel, Federal Communications Commission, to Caressa D. Bennet, Counsel for Hilliary Acquisition Corp. 2016, LLC (January 16, 2025) ("Refund Denial Letter"), ECF No. 2095390, Add. 1-8.

7. Based on the Refund Denial Letter, the FCC then argued in its January 21, 2025 Response that Hilliary did not meet the standard for mandamus because Hilliary could seek review with the full Commission and could petition for review of that decision. FCC Response 12, ECF No. 2095390.

8. Hilliary filed its Reply to the FCC's Response on January 28, 2025. ECF No. 2097144.

9. Additionally, on February 18, 2025—two days before filing this Motion—Hilliary filed a timely Petition for Expedited Reconsideration of the FCC's Refund Denial Letter ("Reconsideration Petition"). *See* Addendum 1-17. As noted in the Reconsideration Petition, "the FCC has no deadline for acting [on the Reconsideration Petition]," meaning that "Hilliary has no adequate vehicle for obtaining timely relief other than continued prosecution of the [Mandamus Petition]" unless "the FCC acts on the [Reconsideration] Petition within a reasonably expeditious timeframe." *Id.* at 6; *see also* 47 C.F.R. § 1.115 (not providing a deadline by which the Commission must act on a petition for reconsideration).

10. Based on Hilliary's submission of its Reconsideration Petition, Hilliary now moves to hold this case in abeyance for 60 days. Abeyance for 60 days makes good sense in these circumstances.

11. Allowing the FCC an opportunity to review Hilliary's Reconsideration Petition would foster judicial efficiency. If the FCC were to grant Hilliary's

Reconsideration Petition in full, that decision may well moot this case, and the Commission and Hilliary could jointly move for dismissal. An abeyance period of 60 days would provide the Commission an ample but reasonably expeditious timeframe to grant Hilliary's Reconsideration Petition and take this case off the Court's docket.

12.     On the other hand, however, an open-ended abeyance period would invite further dilatory tactics by the Commission. Hilliary submitted payment to the Commission on October 16, 2020, nearly four and a half years ago. Hilliary submitted its informal request for refund to the FCC on March 28, 2023, nearly two years ago, but promptly after the FCC lost its auction authority. Placing this case in abeyance for a limited—and defined—term would prevent the Commission from engaging in "a sort of administrative law shell game" "to avoid judicial review" that this Court does not countenance. *Am. Tel. & Tel. Co. v. FCC*, 978 F.2d 727, 731-32 (D.C. Cir. 1992); *see also Lutheran Church-Missouri Synod v. FCC*, 141 F.3d 344, 349 (D.C. Cir. 1998) ("[T]he Commission has on occasion employed some rather unusual legal tactics when it wished to avoid judicial review, but this ploy may well take the prize.").

13.     Further, this Court's precedents support keeping this case open to ensure that Hilliary's Reconsideration Petition does not languish with the Commission for an untold and unpredictable period, all while the Commission still

does not have auction authority. *See, e.g.*, *Telecomms. Research & Action Ctr. v. FCC*, 750 F.2d 70, 81 (D.C. Cir. 1984) (retaining jurisdiction over mandamus case based on the FCC's past delays and ordering that the FCC inform the Court within 30 days of the mandate's issuance "of the dates by which the agency anticipates resolution of both refund disputes").

14.     Hilliary suffers ongoing harm as the refund of $644,722.00 that should be granted sits idly in the FCC's coffers. Whereas Hilliary could use that money to invest in its rural network to promote broadband access, *see* Hilliary Reply 10–11, the funds are put to no use at all by the FCC.

15.     Accordingly, this Court should ensure timely relief for Hilliary by limiting the period of abeyance to 60 days, with motion(s) to govern due at the conclusion of that period.

Dated: February 20, 2025              Respectfully submitted,

                                      */s/* Caressa D. Bennet
                                      Caressa D. Bennet
                                      Michael R. Bennet
                                      Ryan L. Gillcrist
                                      Michael D. Miller
                                      Womble Bond Dickinson (US) LLP
                                      2001 K Street, NW
                                      Suite 400 South
                                      Washington, DC 20006
                                      *Counsel for Hilliary Acquisition Corp. 2016, LLC*

**Certificate of Compliance**

I hereby certify that the foregoing motion complies with the requirements of Fed. R. App. P. 32(a)(5) and (6) because it has been prepared in a 14-point, proportionally spaced font, Times New Roman.

I further certify that the foregoing complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(A) because it contains 920 words, excluding exempted portions, according to the count of Microsoft Word.

/s/ Ryan L. Gillcrist
Ryan L. Gillcrist
Womble Bond Dickinson (US)LLP
2001 K Street, NW
Suite 400 South
Washington, DC 20006

**Certificate of Service**

I hereby certify that on February 20, 2025, I electronically filed the foregoing

using the Court's CM/ECF system, which will send notification of such filing to the

parties.

/s/ Ryan L. Gillcrist
Ryan L. Gillcrist
Womble Bond Dickinson (US)LLP
2001 K Street, NW
Suite 400 South
Washington, DC 20006

# Addendum

**Table of Contents**

Petition for Expedited Reconsideration of Hilliary Acquisition Corp 2016, LLC, AU Docket No. 19-244 (filed Feb. 18, 2025) ………………… ADD. 1 – ADD. 17

**Before the**
**FEDERAL COMMUNICATIONS COMMISSION**
**Washington, D.C. 20554**

| | | |
|---|---|---|
| In the Matter of | ) | |
| | ) | |
| Hilliary Acquisition Corp 2016, LLC | ) | AU Docket No. 19-244 |
| | ) | |
| Request for Expedited Auction Refund | ) | DA 25-61 |

To:     The Commission

**PETITION FOR EXPEDITED RECONSIDERATION OF HILLIARY**
**ACQUISITION CORP 2016, LLC**

**Hilliary Acquisition Corp 2016, LLC**

Caressa D. Bennet
Michael R. Bennet
Ryan L. Gillcrist
Womble Bond Dickinson (US) LLP
2001 K Street, NW
Suite 400 South
Washington, DC 20006
(202) 467-6900
Carri.bennet@wbd-us.com

*Counsel for Hilliary Acquisition Corp 2016, LLC*

February 18, 2025

**Table of Contents**

I.   Background and Introduction ............................................................................. 1

II.     The FCC Failed to Address Hilliary's Request for Relief ................................. 3

III.   The FCC's Rules do Not Contain any Provision for the Commission to Retain the Amount of a *Final* Payment Made by a Disqualified Winning Bidder ................................... 4

IV.   Precedent Requires that the Commission Issue Hilliary's Requested Refund. ........... 5

V.   The Theoretical Possibility of the FCC Regaining Auction Authority Provides No Basis for the FCC to Continue to Hold on to the Excess Payment Amount ........................... 7

VI.   The Refund Order Fails to Demonstrate that Refusing to Refund Excess Payments Serves the Public Interest ................................................................................ 9

VII.   Conclusion ................................................................................................ 11

**Summary**

Hilliary Acquisition Corp 2016, LLC seeks expedited reconsideration of the Federal Communications Commission's decision to deny Hilliary's request for a refund of its excess monies on deposit related to Hilliary's participation in Auction 105, and requests that the Commission issue a refund in the amount of $644,722.00. Reconsideration is warranted because the FCC failed to address Hilliary's request for relief when it denied Hilliary's request for partial refund. Specifically, Hilliary requested a refund of the amount held by the Commission that exceeds the amount required to be deposited under the Commission's rules (*i.e.*, the amount on deposit in excess of the combined amount of upfront payment, down payment, and late fee penalty). The Commission instead ruled on whether it should issue a refund of the *entire amount* of money paid by Hilliary in connection with the auction.

Reconsideration is also warranted because the FCC's rules do not contain any provision for the Commission to retain the amount of a *final* payment made by a disqualified winning bidder. Additionally, precedent requires that the Commission issue a refund of Hilliary's excess monies. Specifically, in another spectrum auction where a winning bidder defaulted, after assessing an initial default penalty, the FCC returned the excess portion of an upfront payment on deposit prior to reauction.

The theoretical possibility of the FCC regaining auction authority also provides no basis for the FCC to continue to unlawfully retain the excess payment amount. Although the FCC hopes that its auction authority will be restored, it remains without such authority to reauction Hilliary's licenses, and absent such authority, there is no imminent possibility of a reauction occurring. As such, the FCC has no factual or legal basis to retain the excess payment amounts.

The FCC's Refund Order also failed to demonstrate that refusing to refund excess payments serves the public interest. Hilliary planned and continues to plan to use the excess funds to finance the buildout of broadband service to southeastern Oklahoma, within the Choctaw Nation. The interests prejudiced by the refund delay go well beyond Hilliary and extend to all those who live, work, and travel through southeastern Oklahoma. Hilliary has demonstrated a commitment to providing broadband access in its affiliates' rural telephone company service territories in Oklahoma, Texas, and Iowa. Contrary to what the FCC argues, holding on to overpayments indefinitely is not necessary to achieve the Commission's goal of receiving the full value of the winning bid amount through the deficiency payment and to deter future defaults.

Hilliary requests that the FCC reconsider its prior decision to deny Hilliary's request for a refund of its excess monies on deposit and issue a refund of such amount. Expedited reconsideration is warranted due to the lengthy and excessive period of time that the FCC has unlawfully retained the overpayment. Hilliary does not dispute its obligation to pay the full amount of its winning bids, as modified by any deficiency payment, at the time it is due. If and when the FCC regains its auction authority, holds a reauction of the subject licenses, and assesses a final default penalty, Hilliary remains committed to paying any final default penalty that may be required.

| | | |
|---|---|---|
| In the Matter of | ) | |
| | ) | |
| Hilliary Acquisition Corp 2016, LLC | ) | AU Docket No. 19-244 |
| | ) | |
| Request for Expedited Auction Refund | ) | DA 25-61 |

## PETITION FOR EXPEDITED RECONSIDERATION OF HILLIARY ACQUISITION CORP 2016, LLC

Hilliary Acquisition Corp 2016, LLC ("Hilliary"), pursuant to section 1.106 of the Federal Communications Commission's ("FCC" or "Commission") rules,[1] submits this Petition for Expedited Reconsideration of the Commission's decision[2] to deny Hilliary's request[3] for a refund of its "remaining monies on deposit."[4]

### I.      Background and Introduction

In 2020, Hilliary participated in Auction 105 for Priority Access Licenses ("PALs") in the 3550-3650 MHz (3.5 GHz) Citizens Broadband Radio Service ("CBRS") band.  Hilliary, the highest bidder on 42 licenses,[5] made a timely upfront payment of $102,700.00 for the licenses it won in Auction 105 by the June 19, 2020 deadline.[6]  Hilliary failed to meet the September 17, 2020 deadline for submitting a down payment of $58,493.00.  On October 8, 2020, Hilliary

---

[1] 47 C.F.R. § 1.106.

[2] *Hilliary Acquisition Corp 2016, LLC Request for Expedited Auction Refund*, Letter Order, DA 25-61 (Jan. 16, 2025) ("Refund Order").

[3] Letter from Caressa D. Bennet, Robert A. Silverman, and Stephen T. Sharbaugh, Counsel for Hilliary Acquisition Corp 2016, LLC, to Jonathan M. Campbell, Chief, Auctions Division, Office of Economics and Analytics (Mar. 28, 2023) ("Informal Refund Request")

[4] Informal Refund Request, at 1.

[5] *See Auction of Priority Access Licenses in the 3550-3650 MHz Band Closes, Winning Bidders Announced for Auction 105,* Public Notice, 35 FCC Rcd 9287 (Attachment A) (2020) ("Auction 105 Closing Public Notice").

[6] *See Auction of Priority Access Licenses for the 3550-3650 MHz Band, 271 Applicants Qualified to Bid in Auction 105*, Public Notice, 35 FCC Rcd 6672, 6691 (2020).

submitted an additional payment of $738,428.25 to cover the down payment, final payment, and a $35,163.25 "late fee" of five percent of that amount.[7]

On July 18, 2022, the FCC's Office of Economics and Analytics, Auctions Division, and Wireless Telecommunications Bureau, Mobility Division, assessed Hilliary an interim default penalty of $161,193.00[8] and stated that it will subsequently assess a final default penalty after license(s) for the covered spectrum receive winning bids in a future auction.[9] On March 28, 2023, Hilliary submitted an informal request for refund of the funds unlawfully held by the FCC.[10] On December 5, 2024, Hilliary filed a Petition for Writ of Mandamus with the U.S. Court of Appeals for the District of Columbia Circuit seeking action on the refund of the excess money being unlawfully held by the FCC.[11] That petition remains pending. On January 16, 2025, the FCC released the Refund Order denying Hilliary's Informal Refund Request, and on February 18, 2025, by this Petition, Hilliary seeks reconsideration of the Refund Order. Because the FCC has no deadline for acting on this Petition, unless the FCC acts on the Petition within a reasonably expeditious timeframe, Hilliary has no adequate vehicle for obtaining timely relief other than the continued prosecution of its Petition for Mandamus.

---

[7] *See* 47 C.F.R. § 1.2109(a). While the FCC's *Winning Bidders Public Notice* announced October 1, 2020, as the Final Balance due date, that Public Notice allowed final payments to be made by October 16, 2020, along with the 5% late fee required by Section 1.2109(a) of the FCC's rules to avoid default. *Auction of Priority Access Licenses in the 3550-3650 MHz Band Closes; Winning Bidders Announced for Auction 105,* Public Notice, AU Docket No. 19-244, DA 20-1009, rel. September 2, 2020, at para. 13 (*Winning Bidders Public Notice*).

[8] The interim default penalty in the amount of 20 percent of Hilliary's defaulted net bid amount was assessed pursuant to Section 1.2106(e) of the FCC's rules which states that "in the event a penalty is assessed pursuant to § 1.2104 for bid withdrawal or default, upfront payments or down payments on deposit with the Commission will be used to satisfy the bid withdrawal or default penalty before being applied toward any additional payment obligations that the high bidder may have."

[9] *See Hilliary Acquisition Corp 2016, LLC, Request for Waiver of Down Payment Deadline for Auction 105*, Memorandum Opinion and Order, 37 FCC Rcd 8228, 8234, at para. 19 (OEA/WTB 2022).

[10] *See* Informal Refund Request.

[11] *See* Petition for Writ of Mandamus, In re: Hilliary Acquisition Corp. 2016, LLC, *reply to opposition filed*, No. 24-1371 (D.C. Cir. Dec. 5, 2024).

Hilliary seeks expedited reconsideration of that decision and is requesting that the Commission return $644,722.00 of the $841,128.25 being held by the Commission. Hilliary is not requesting return of the upfront payment of $102,700.00, the down payment of $58,493.00, and the five-percent late payment of $35,163.25. Rather, it is only requesting return of the $644,722.00 overpayment made on October 16, 2020, which is being illegally held.[12] Due to the lengthy and excessive period of time that the FCC has unlawfully retained the amount of Hilliary's overpayment, Hilliary seeks expedited reconsideration of the Refund Order and issuance of the requested refund.

## II.    The FCC Failed to Address Hilliary's Request for Relief.

The FCC should expeditiously reconsider its decision to deny Hilliary's informal request for refund because that decision was based on a misinterpretation of the relief requested by Hilliary in its Informal Refund Request. Hilliary requested a refund of its "remaining monies on deposit,"[13] which refers to $644,772.00, the amount held by the Commission that exceeds the amount required to be held under the Commission's rules[14] (*i.e.*, the amount on deposit in excess of the combined amount of upfront payment, down payment, and late fee penalty). In the Refund Order, the Commission ruled instead on a question not raised by Hilliary – whether the FCC should refund the entire amount of money paid by Hilliary in connection with the auction.[15]

---

[12] The late fee payment of $35,163.25 should also be returned given that the FCC rejected the final payment submitted on October 8, 2020, but Hilliary is not seeking its return at this point in time since it is unclear from the FCC's rules whether the late fee also applied to the down payment.

[13] Informal Refund Request, at 1.

[14] The amount of money that is currently permitted to be held by the FCC is arguably $196,356.25, which is the sum of the required upfront payment ($102,700.00), down payment ($58,493.00), and late fee penalty ($35,163.25). *But see footnote 12 supra (*noting that the late fee penalty is arguably subject to return*).

[15] The Commission treated Hilliary's Informal Refund Request as a request for a refund of its entire amount "on deposit." Refund Order at 1, 7. *See also* Opposition of the FCC to Petition for Writ of Mandamus, In re: Hilliary Acquisition Corp. 2016, LLC, *reply to opposition filed,* No. 24-1371 (D.C. Cir. Jan. 21, 2025) ("On March 28, 2023, Hilliary asked the Commission to refund *all of the payments* Hilliary had made in Auction 105.") (emphasis added).

Because Hilliary sought neither a refund of the entire amount on deposit with the Commission nor a refund of the interim default payment levied by the Commission, the FCC should reconsider its denial of Hilliary's refund request. The Refund Order addresses only whether Hilliary is entitled to a *full refund* of all money held by the Commission, and not whether Hilliary is entitled to the excess amounts paid to the Commission, and therefore its rejection of Hilliary's Informal Refund Request constitutes material error.

### III. The FCC's Rules do Not Contain any Provision for the Commission to Retain the Amount of a *Final* Payment Made by a Disqualified Winning Bidder.

In its Refund Order, the FCC states that "Hilliary has not identified any Commission rule or precedent that entitles it to a refund of its payments on deposit with the Commission prior to calculation of its final default penalty."[16] The FCC's rules provide that a defaulting bidder will be subject to a default payment deducted from any *upfront or down payments* that the defaulting bidder has deposited with the Commission.[17] Notably, the Commission's rules do not contain any provision for the Commission to retain the amount of a *final* payment made by a disqualified winning bidder. The Commission's penalty rule contemplates potential deduction only from any upfront payments or down payments. While the Refund Order expresses a policy preference for the FCC to hold on to overpayments so as not to bear the risk of a defaulting bidder ultimately failing to pay its final default penalty, the FCC's rules clearly intend that *the FCC* bear this risk, not the auction participant. As such, there is no lawful basis for the Commission to retain or continue to retain the amount of the final payment paid by Hilliary (*i.e.*, the $644,722.00).

---

[16] Refund Order, at 4.
[17] 47 C.F.R. § 1.2104(g)(2).

4

Significantly, the FCC has previously stated that defaulting bidders in auctions are entitled to refunds of their upfront payment monies that are in excess of their auction obligations.[18]

The FCC emphasizes that Hilliary assumed a "binding obligation" to pay the full amount of its winning bid when it placed bids in Auction 105.[19]  To be clear, Hilliary does not dispute its obligation to pay the full amount of its winning bids, as modified by any deficiency payment, *at the time it is due*.  Hilliary only disputes the notion that the Commission can indefinitely keep Hilliary's funds that exceed the penalty amounts that Hilliary is currently required to have paid the FCC.  This continued taking by the FCC is even more egregious given its lack of auction authority that has been ongoing for nearly two years, which is discussed in Section V, *infra*.

### IV.      Precedent Requires that the Commission Issue Hilliary's Requested Refund.

In other spectrum auctions where a winning bidder defaulted, after assessing an initial default penalty, the FCC returned the excess portion of an upfront payment on deposit prior to reauction.[20]  Grand Connectivity L.L.C. ("Grand Connectivity"), a higher bidder on seven licenses in Auction 23, defaulted by failing to submit a required down payment after timely submitting an upfront payment of $150,000.00.[21]  That amount on deposit with the Commission was sufficient to satisfy Grand Connectivity's initial default penalty of $80,241.00.[22]  After assessing a three-percent default penalty, the Commission refunded $69,760.50, Grand Connectivity's remaining amount on deposit.[23]  Similarly, in *Wilbur Johnson*, the Commission,

---

[18] *See* Auction 105 Closing Public Notice, at para. 27 ("Upfront payment monies on deposit with the Commission that are in excess of an applicant's Auction 105 obligations will be refunded to the payer of record, as identified on the FCC Form 159 submitted with the applicant's upfront payment, unless that payer submits written authorization providing alternative payee instructions.")
[19] Refund Order, at 4.
[20] *See In the Matter of Request for Waiver of Section 1.2104(g) of the Commission's Rules filed by Grand Connectivity L.L.C.*, Order, DA 99-1726 (Aug. 27, 1999) ("*Grand Connectivity*").
[21] *Id.* at 2.
[22] *Id.* at 6.
[23] *Id.*

5

after applying the upfront payment towards the down payment requirement, issued a refund of the remaining balance on deposit.[24] The Commission must afford Hilliary the *same* treatment that it afforded the defaulting bidder in these cases, by refunding the excess portion of money on deposit.[25]

Under the FCC's reasoning in the Refund Order, the Commission should have held onto Grand Connectivity and Wilbur Johnson's remaining amounts on deposit until after a reauction occurred to ensure that it paid the final amount. Instead, the Commission stated *only after* the licenses are reauctioned and the actual default penalty (if any) can be determined, will the defaulting bidder be subject to the balance of the payment specified in the FCC's auction rules.[26] Thus, the FCC has no right to the excess portion of Hilliary's money until *after* the FCC determines a default penalty.

The FCC states that "it has been the Commission's practice to hold any payments deposited by a winning bidder who has defaulted on its licenses until the winning bidder's final default payment can be calculated."[27] However, to the extent it has done so,[28] this is simply an informal practice. It is not specified by the Commission's rules.

By keeping the excess $644,722.00 instead of timely returning it, the FCC is going well beyond what is required by the rules, acting inconsistently with its treatment of a similarly situated applicant, and arbitrarily and capriciously punishing Hilliary.

---

[24] *Final Default Payment for Auction 62 Construction Permit FM027-A (Boonville, CA)*, DA 22-1147 (OEA 2022) ("*Wilbur Johnson*") (The FCC retained $53,430.00 of Wilbur Johnson's upfront payment of $60,000, applying that amount towards the down payment, and refunded the remaining balance of the upfront payment in the amount of $4,464.00).

[25] The FCC may not treat Hilliary differently than similarly situated applicants for spectrum. *See Melody Music, Inc. v. FCC*, 345 F.2d 730, 731-33 (D.C. Cir. 1965).

[26] *Grand Connectivity*, at para. 9-10; *Wilbur Johnson* at p. 2.

[27] *See* Refund Order, at n. 30 (citing *Application of the ERIE Radio Company*, LLC, 32 FCC Rcd 3890, 3897, para. 20 (WTB 2017)) ("*Erie Radio Company*").

[28] As discussed below, the FCC has only cited one case where it has held on to an overpayment -- *Erie Radio Company*.

6

The Refund Order notes that "[i]n a number of cases, the Commission has conducted auctions of spectrum licenses after longer periods have passed after a default."[29]  None of these cases are applicable to Hilliary.  In the case of *TPS Utilicom*, the defaulting bidder had less money on deposit than was required by the FCC's rules, and the FCC therefore – unlike its treatment of Hilliary -- was not holding any money in excess of what was required.[30]   In *Wilbur Johnson*, the FCC refunded the amount of the overpayment long before the reauction took place.[31]  In only two cases, *Erie Radio Company, LLC and Golden Arrow Paging,[32]*  has the FCC held onto money deposited by the defaulting bidder that exceeded the amount required to be deposited, but in those cases, unlike here, the FCC had auction authority, and, after holding a reauction, was able to calculate and assess the final default penalty without undue delay.

### V.      The Theoretical Possibility of the FCC Regaining Auction Authority Provides No Basis for the FCC to Continue to Hold on to the Excess Payment Amount.

In its Informal Refund Request, Hilliary pointed out that, in addition to the lack of authority to hold onto the entirety of Hilliary's auction payments, the FCC's claim that it is only doing so temporarily until it can hold a reauction of the subject licenses, and thereby determine the amount of the default penalty to be assessed against Hilliary, is belied by the FCC's lack of

---

[29] Refund Order, at 5 (noting periods of up to 15 years to reauction spectrum).

[30] *See Final Default Payment for Auction No.* 35, DA 07-3801 (WTB 2007) ("*TPS Utilicom*").

[31] *Wilbur Johnson, Notice of Interim Default Payment Obligation for Auction 62*, Letter Order, 21 FCC Rcd 13198 (WTB 2006) (On March 10, 2006, the FCC issued a refund of Wilbur Johnson's overpayment); *Wilbur* Johnson, at p. 1 (The reauction of the underlying construction permit did not close until August 5, 2021).

[32] *Final Default Payment Obligation for Auction 98, The ERIE Radio Company, LLC*, Letter Order, 37 FCC Rcd 14010, 1040-11 (OEA 2022); *Final Default Payment Amount for Two Auction 40 Licenses, Golden Arrow Paging, Inc.*, Letter Order, 37 FCC Rcd 14820 (OEA 2022);  *Final Default Payment for fifteen Auction 40 Licenses CP-BEA084-FA (Baton Rouge, LA-MS); CP-BEA087-FA (Beaumont-Port Arthur, TX); CP-BEA127-FA (Dallas-Forth Worth, TX-AR-OK); CP-BEA129-FA (San Angelo, TX); CP-BEA129-FB (San Angelo, TX); CP-BEA129-FC (San Angelo, TX); CP-BEA129-FD (San Angelo, TX); CP-BEA129-FE (San Angelo, TX); CP-BEA130-FA (Austin-San Marcos, TX); CP-BEA134- FA (San Antonio, TX); CZ-MEA031-AA (Houston); CZ-MEA031-AJ (Houston); CA-MEA031-AK (Houston); CZ-MEA031-AV (Houston); CZ-MEA038-AV (San Antonio)*, DA 12-441 (WTB 2012) ("*Golden Arrow Paging*").

statutory auction authority.[33]  The Refund Order asserts that a subsequent auction of the subject licenses is "possible" *if* authorized by Congressional action.[34]  Despite the FCC's hopes of having its auction authority restored, it remains without authority to reauction the CBRS PAL licenses won by Hilliary, and absent such authority, there is no imminent possibility of a reauction occurring.

While the Commission points to a recent Congressional authorization for the Commission to conduct an auction for the purpose of granting licenses for specific spectrum in its inventory that had previously been auctioned, and defaulted upon, in Auction 97,[35]  Congress only authorized a reauction of spectrum won in Auction 97 to fund the FCC's Secure and Trusted Communications Networks Reimbursement Program, a program with a long-standing funding shortfall, and did not authorize any other auctions.[36]

The FCC also asserts that "Congress has repeatedly extended prior expiration dates rather than permitting a lapse."[37]  However, Congress's attempt to restore the FCC's auction authority during the 118th Congress were met with opposition and failed.[38]  The 119th Congress has seen one bill in the House introduced to restore the FCC's auction authority and no companion Senate

---

[33] *See The Federal Communications Commission's Spectrum Auction Authority: History and Options for Reinstatement* (Sep. 12, 2023), *available* at https://crsreports.congress.gov/product/pdf/R/R47578 (last viewed Feb. 18, 2025).

[34] Refund Order, at 4, 6.

[35] *Id.,* at 5.

[36] Servicemember Quality of Life Improvement and National Defense Authorization Act for Fiscal Year 2025, Pub. L. No. 118-159, Div. E, Title LIV, § 5401-5405 (Spectrum and Secure Technology and Innovation Act), § 5403 (2024), https://www.congress.gov/bill/118th-congress/house-bill/5009. *See also* Nick Wood, *FCC eyes quick spectrum auction to pay for rip-and*-replace, Telecoms.com (Jan. 7, 2025), https://www.telecoms.com/regulation/fcc-eyes-quick-spectrum-auction-to-pay-for-rip-and-replace (last viewed Feb. 14, 2025).

[37] Refund Order, at 5.

[38] *See The Federal Communications Commission's Spectrum Auction Authority: History and Options for Reinstatement* (Sep. 12, 2023), *available* at https://crsreports.congress.gov/product/pdf/R/R47578 (last viewed Feb. 18, 2025).

8

bill.[39]  As such, there is no imminent possibility that the FCC will regain its auction authority, which it has now lacked for a period of almost two years.

The possibility of the FCC regaining auction authority is simply that, a possibility[40], and as such does not provide a basis for the Commission to calculate the final default penalty at this time.  Accordingly, the FCC has no factual or legal basis to hold onto the $644,722.00.

## VI. The Refund Order Fails to Demonstrate that Refusing to Refund Excess Payments Serves the Public Interest.

The Refund Order arbitrarily and capriciously rejects Hilliary's argument that issuing the requested refund would serve the public interest.  The Commission contends that there is no guarantee that Hilliary will use the returned funds to invest in broadband access or that such investment ultimately would further the public interest.[41]  Hilliary, which has been unable to use or invest the principal amount for over four years, planned (and continues to plan) to use the excess funds to finance the buildout of broadband service to southeastern Oklahoma, within the Choctaw Nation, specifically in rural parts of Leflore County, an area currently unserved with broadband service.  The project would serve 200 homes and extend ten miles of fiber into such unserved areas.  The interests prejudiced by the delay go beyond Hilliary and extend to all those

---

[39] *See H.R. 651 – To require the Federal Communications Commission to auction spectrum in the band between 1.3 gigahertz and 13.2 gigahertz, and for other purposes*, https://www.congress.gov/bill/119th-congress/housebill/651/text?s=10&r=1&q=%7B%22search%22%3A%22spectrum%22%7D (last viewed Feb. 10, 2025).

[40] Moreover, even if the FCC were to regain its auction authority, FCC Chairman Carr has already made it clear that his first spectrum auction priority is the AWS-3 band, followed by additional C-Band spectrum.  The Commission will begin the process for reauctioning certain AWS-3 spectrum licenses by adopting a Notice of Proposed Rulemaking and will begin exploring the auction of such C-Band spectrum by adopting a Notice of Inquiry.  *See* Brendan Carr, *The First Agenda for the New Commission – Spectrum, Public Safety, and Consumer Protection* (Feb. 5, 2025), https://www.fcc.gov/news-events/blog/2025/02/05/first-agenda-new-commission-spectrum-public-safety-and-consumer (last viewed Feb. 18, 2025).  Reauctioning the CBRS spectrum is not on the horizon even if Congress were to restore auction authority to the FCC.

[41] Refund Order, at 7.  Historically, the FCC has only been capable of holding one spectrum auction at a time.  Based on the average time between the issuing of the NPRM proposing rules for a new auction and the completion of a spectrum auction, it is expected that a hypothetical CBRS reauction would occur no earlier than two years after the completion of a hypothetical AWS-3 auction, if the FCC even had auction authority by then.

9

Add. 13

who live, work, and travel through southeastern Oklahoma.  The Commission's holding of Hilliary's excess funds amounts to a clear, demonstrable, and substantial harm to Hilliary and the public interest.

Hilliary has demonstrated its continued commitment to providing broadband access in its affiliates' rural telephone company service territories in Oklahoma, Texas, and Iowa.  Hilliary, and its affiliated rural telephone companies[42], are regulated by the FCC, have been doing business for decades, and are participants in numerous FCC universal service fund programs, including Enhanced Alternative Connect America Cost Model ("E-ACAM") and Lifeline.  Its many affiliates receive high-cost support from the Universal Service Fund and have made many commitments through the FCC's various high cost fund programs throughout the past two decades, and are committed to do so through those programs as required by the FCC.[43]  The FCC has numerous mechanisms at its disposal to ensure that Hilliary meets its financial obligations.  It is a core component of the FCC's broadband policy that investing in the expansion of broadband access benefits the public.[44]  The FCC provides no basis for its belief that Hilliary's planned buildout will not do so, other than the fact that no one can "guarantee" the future.

The Commission asserts that the public interest is served best by adhering to the Commission's default payment methodology, which helps the FCC to receive the full value of

---

[42] Hilliary's affiliates include: (1) Medicine Park Telephone Company, Inc.; (2) Oklahoma Western Telephone Company, Inc.; (3) Phoenix Long Distance, Inc.; (4) Wichita Online, LLC; (5) Oklahoma Fiber Network, LLC; (6) Southern Plains Cable, LLC; (7) Texhoma Fiber, LLC; (8) Southwest Oklahoma Telephone, Inc.; (9) Tatum Telephone Company, Inc.; (10) Electra Telephone Company, Inc.; (11) Border to Border, Inc.; (12) Prairieburg Telephone Company, Inc.; (13) Lipan Telecommunications, Inc.; (14) Phoenix Communications Systems, Inc.; and (15) Star Search Rural Television Company.
[43] Affiliates of Hilliary also participate in USDA's Rural Utilities Service ReConnect loan and grant programs which require compliance with federal rules and regulations, including payment of federal debts.
[44] *See Connecting America: The National Broadband Plan* (Mar. 17, 2010), *available at* transition.fcc.gov/national-broadband-plan/national-broadbandplan.pdf (last viewed Feb. 10, 2025).

Add. 14

the winning bid amount through the deficiency payment and deter defaults.[45] Holding on to

overpayments indefinitely is not necessary to achieve these ends.

The FCC's rule already ensures that the FCC will receive the full value of the winning

bid amount and serves as a deterrent to bidders considering default.

### VII. Conclusion

For the foregoing reasons, Hilliary respectfully requests that the FCC reconsider on an

expedited basis its prior decision to deny Hilliary's request for a refund of its excess monies on

deposit and issue a refund as requested herein. If and when the FCC regains its auction

authority, holds a reauction of the subject licenses, and expeditiously assesses a final default

penalty, Hilliary will pay any such penalty that may be required.

Respectfully submitted,

/s/ Caressa D. Bennet

_____

Caressa D. Bennet
Michael R. Bennet
Ryan L. Gillcrist
Womble Bond Dickinson (US) LLP
2001 K Street, NW
Suite 400 South
Washington, DC 20006
(202) 467-6900
Carri.bennet@wbd-us.com

*Counsel for Hilliary Acquisition Corp 2016, LLC*

February 18, 2025

---

[45] Refund Order, at. 6-7. The Commission illogically states that "[i]f the Commission cannot recover default payments, however, then default payments will have no deterrent effect." *Id.*, at 7. While the statement is correct, it is meaningless because the Commission *can* recover default payments. Because it can recover default payments, such payments will have a deterrent effect.

## DECLARATION

I, Dustin Hilliary, hereby declare under the penalty of perjury as follows:

1. I am the Co-Chief Executive Officer of Hilliary Acquisition Corp 2016, LLC ("Hilliary").

2. I have read the foregoing Petition for Reconsideration, and to the best of my knowledge the facts set forth therein are true and correct.

Executed this 18ᵗʰ day of February 2025.

Dustin Hilliary
Co-Chief Executive Officer
Hilliary Acquisition Corp 2016, LLC

**CERTIFICATE OF SERVICE**

I, Ryan Gillcrist, certify that on February 18, 2025, a copy of the foregoing pleading was

served on the following individuals via electronic mail:

Mary Lovejoy
Chief, Auctions Division
Office of Economics and Analytics
Mary.lovejoy@fcc.gov


Roger Noel
Chief, Mobility Division
Wireless Telecommunications Bureau
Roger.noel@fcc.gov

/s/ *Ryan Gillcrist*
Ryan Gillcrist
*Counsel for Hilliary Acquisition Corp 2016, LLC*
